**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DORIS L. MORRISON** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.  3:22-cv-181** |
| | § | <u>**JURY**</u> |
| **STATE FARM LLOYDS** | § | |
| **Defendant.** | § | |

---

### NOTICE OF REMOVAL

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Petitioner, State Farm Lloyds (hereinafter "State Farm"), states in support of its Notice of Removal of the case originally filed with the 162nd Judicial District of Dallas County, Texas as follows:

### <u>DIVERSITY FACTS</u>

1.      On October 20, 2021, Plaintiff commenced a civil action against State Farm Lloyds, Inc. alleging this entity with which Plaintiff had contracted in regards to the breach of contract allegation.  Plaintiff's Original Petition, attached as Exhibit 1. Plaintiff filed an Amended Petition on December 28, 2021 naming the correct insurance company with whom Plaintiff had contracted and State Farm Lloyds agreed that in connection with this case only, it would permit Plaintiff to serve its attorney and that service on its attorney would serve as service on State Farm Lloyds on the same date it was served on the attorney. Plaintiff's Amended Petition, attached as Exhibit 2, was served via Acceptance of Service Under Texas Rules of Civil Procedure 119 on January 4, 2022.

Complete diversity exists for jurisdictional purposes between Plaintiff and Defendant, State Farm Lloyds and the amount in controversy is in excess of $75,000.00

2.    On the date of the commencement of this action, State Farm Lloyds was and continues to be an association of underwriters organized under the Lloyds Plan, as set forth in the Texas Insurance Code.    All underwriters of State Farm Lloyds are residents of Illinois. Consequently, State Farm Lloyds is not considered, as a matter of law, a citizen of Texas.

3.    Plaintiff is an individual whose residence is located in Dallas County, Texas and who own the property that is the subject of this lawsuit.    Said property is located in the city of Dallas, Dallas County, Texas.

4.    This action involves an amount in controversy in excess of Seventy Five Thousand Dollars ($75,000.00) inclusive of interest and costs based on the allegations in Plaintiff's First Amended Petition the coverages afforded under the subject insurance contract were not paid by Defendant and the amount of coverage not paid was in excess of $75,000.00.    Further, Plaintiff is also seeking attorney's fees and it is likely the attorney's fees sought will be in excess of $75,000.000 as well.    Additionally, Plaintiff filed this case as a Level 2 under Rule 190 of the Texas Rules of Civil Procedure which is the rule that applies in cases where the damages sought are in excess of $250,000.00.    The cause is therefore removable based on diversity of citizenship, pursuant to 28 U.S.C.A §1332 and §1441, as between Plaintiff and Defendant, State Farm Lloyds.

5.    This Notice of Removal is filed within thirty (30) days after receipt by State Farm of Plaintiffs' First Amended Petition, which was served on January 4, 2022.

5.    State Farm affirmatively states the amount in controversy exceeds the diversity requirement of $75,000.00, exclusive of interest and costs.    *See St. Paul Reinsurance Co., Ltd. v.*

*Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("in addition to policy limits and potential attorney's fees, items to be considered in ascertaining the amount in controversy when the insurer could be liable for those sums under state law are, *inter alia*, penalties, statutory damages, and punitive damages and just not interest or costs"). See also *Toney v. State Farm Lloyds*, 661 Fed. Appx. 287, 2016 WL 4784012 at n. 8 (5th Cir. 2016) (citing *Greenberg* with approval). The damages sought as outlined in the First Amended Petition filed in state court are in excess of $75,000.00. The amount in controversy squarely puts this case within the jurisdictional minimum of this Court for diversity purposes. See *Pershing, L.L.C. v. Kiebach*, 819 F. 3d 179, 182 (5th Cir. 2016); *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 761-62 (5th Cir. 2000).

      6.    Written notice of the filing of this Notice will be given to all adverse parties as required by law.

      7.    A true and correct copy of this Notice will be filed with the Clerk of the 162nd Judicial District Court, Dallas County, Texas, as provided by law.

      WHEREFORE, Defendant State Farm prays it may effect the removal of this action from the 162nd Judicial District Court, Dallas County, Texas.

Respectfully submitted,

**THE LAW OFFICE OF ARMANDO DE DIEGO, P.C.**

By:    /s/   Armando De Diego
       ARMANDO DE DIEGO
       State Bar No. 05635400
       Email: adediego@dediego.com

       HARVEY G. JOSEPH
       State Bar No. 11027850
       Email: hjoseph@dediego.com

1201 Griffin St W
Dallas, Texas 75215-1030
Telephone:    (214) 426-1220
Facsimile:    (214) 426-1246

**ATTORNEYS FOR DEFENDANT,
STATE FARM LLOYDS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this, the 26th day of January, 2022, the foregoing document was electronically submitted to the Clerk of Court for the U.S. District Court, Eastern District of Texas, using the electronic case files system of the Court. The electronic case files system sent a "Notice of Electronic Filing" to the following individual who has consented in writing to accept this Notice as service of this document by electronic means:

Patrick Pijls
**MCKOOL SMITH PC**
300 Crescent Court, Suite 1500
Dallas, Texas 75201

✔ Via Electronic Service
✔ Via Certified Mail, RRE
_____ Via Facsimile
_____ Via Regular Mail

_____/s/    Armando De Diego_____
ARMANDO DE DIEGO

# Exhibit 1

FILED
10/20/2021 12:24 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Christi Underwood DEPUTY

CAUSE NO. DC-21-15606 _____

| | | |
|---|---|---|
| **DORIS L. MORRISON,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **DALLAS COUNTY, TEXAS** |
| **STATE FARM LLOYDS INC.,** | § | |
| | § | |
| **Defendant.** | § | 162nd |
| | § | |
| | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF DORIS L. MORRISON'S ORIGINAL PETITION

To the Honorable Court:

Plaintiff Doris L. Morrison, complaining of Defendant State Farm Lloyds Inc., respectfully shows the following:

## I.    DISCOVERY LEVEL

1.    Morrison intends to conduct discovery under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

## II.    NATURE OF THE ACTION

2.    Morrison seeks monetary and declaratory relief, costs, and attorneys' fees for common-law breach of contract (homeowner's insurance policy) under the laws of the State of Texas.

## III.    JURISDICTION AND VENUE

3.    This Court has original subject-matter jurisdiction over this action because the amount in controversy exceeds $500, exclusive of interest.

4.    This Court has personal jurisdiction over State Farm Lloyds because it contracted to insure property located in the State of Texas.

5.    This venue is proper because, at the time of loss, the insured property was located in Dallas County, Texas.

## IV.    PARTIES

6.    Doris L. Morrison is a natural person and citizen of the State of Texas. The last three numbers of her driver's license number are 223. The last three numbers of her social-security number are 846.

7.    State Farm Lloyds Inc. ("SFL") is a domestic insurer of, as relevant here, real and personal property. SFL may be served with process by serving Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## V.    FACTUAL BACKGROUND

8.    On October 20, 2019, a tornado sustaining speeds of up to 140 miles per hour struck and destroyed Morrison's condominium-home and personal property in Dallas, Texas. SFL insured Morrison's building and personal property. Yet when Morrison submitted a claim to SFL for losses arising out of the tornado, SFL refused to pay all of the coverage due and owing under the policy. Morrison's life has been upended by the tornado, and SFL cannot undo all the harm she has suffered. SFL can, however, uphold its contractual commitment to help Morrison move on with her life. Having purchased her homeowner's policy for moments like this one, Morrison brings this action to be made whole under her policy.

### A.    A Tornado Strikes Morrison's Building and Personal Property and Gives Rise to Insured Losses.

9.    On or around October 20, 2019, 10 tornados touched down in the Dallas-Fort Worth Metroplex.

10.    At its peak, the worst of the tornados, at issue here, stretched three-quarters of a mile wide and sustained winds of up to 140 miles per hour. On the Enhanced Fujita Scale (the "EF Scale"), a measure of tornado strength, the tornado was classified as EF-3, the first such tornado to strike Dallas since 1976. The tornado tore from Dallas to Richardson, resulting in about $2 billion worth of insured property damage, the costliest tornado outbreak in Texas history. Morrison's former condominium-home, along with 30 additional homes, were located at the center of the tornado's path. The home's address was 11224 Park Central Place, Apartment A, Dallas, Texas 75230-3303.

11.    Morrison's home was the lower unit of a two-unit stacked structure. The tornado undermined the structure's physical integrity. And the direct force of wind blew open at least

2

Morrison's window, blew open at least the upper unit's walls and roof, and fell at least Morrison's bedroom and hallway ceilings.

12.     By opening the walls, windows, and roof of the structure, the tornado allowed rain, sand, or dust to immediately enter the home. For example, rain entered the walls, windows, or roof of at least the upper unit and soaked through the flooring to Morrison's unit thus destroying all personal property susceptible to water damage, including by warping furniture. No one could have taken any reasonable efforts to prevent loss of any personal property.

13.     Though the association covered some of the complex's structures with tarps, for example, the structural integrity of Morrison's two-unit stacked structure was too compromised to access and lay a tarp. For the same reason, no one could safely enter the home to remove any personal property. The entire complex, moreover, was a debris field. The poor structural integrity and debris field aside, the home contained asbestos, which the tornado had dislodged and blown into Morrison's home. Indeed, Morrison informed a SFL claims adjuster of the presence of asbestos, and fearing for her own safety, the adjuster refused to visit the home and to adjust the property.[1]

14.     Owing to the tornado, the entire condominium complex, including Morrison's home, was demolished on or around June 18, 2020 and has not yet been rebuilt. Since the tornado destroyed her building and personal property, Morrison has also suffered losses relating to loss assessment.

---

[1] Morrison knows the adjuster only by the name "Sharonda."

**B.    The Policy Provides Coverage.**

15.    Having paid a substantial premium, Morrison is the "named insured"[2] under SFL policy number 53-NJ-9952-4,[3] which was in effect from March 23, 2019 to March 23, 2020 (the "Policy"),[4] and Morrison's former condominium-home was the "residence premises."[5]

16.    The Policy provides coverage for "Personal Property," coverage that the Policy labels as "Coverage B,"[6] up to a limit of liability of $37,500.[7]

17.    Under Coverage B, the Policy covers "personal property owned or used by an insured while it is anywhere in the world."[8]

18.    SFL covenants to pay for "accidental direct physical loss to the property described in Coverage B," so long as that loss is caused by an insured loss.[9]

19.    The Policy also provides coverage for "jewelry,"[10] coverage that the Policy labels as "Option JF,"[11] up to a limit of liability of $1,500 per article or $2,500 in the aggregate for each loss.[12]

---

[2] Ex. A, Policy, at HO-2000 at 2 (cleaned up). The numbers of the policy forms can be found on the lower-left or -right corners of the forms.

[3] HO-2000 at 1.

[4] HO-2000 at 1.

[5] HO-2000 at 1 (cleaned up).

[6] H6-2143 at 5-7.

[7] HO-2000 at 2.

[8] H6-2143 at 5 (cleaned up).

[9] H6-2143 at 12.

[10] HO-2000 at 3 (cleaned up).

[11] H6-2143 at 37.

[12] HO-2000 at 3; HG6-2143 at 37.

4

20.    SFL covenants to pay for "accidental direct physical loss or damage" to "jewelry,"[13] so long as that loss is caused by an insured loss.

21.    The Policy also provides coverage for "Building Property," coverage that the Policy labels as "Coverage A,"[14] up to a limit of liability of $82,400.[15] And the Policy provides coverage for "Loss Assessment," coverage that the Policy labels as "Coverage D,"[16] up to a limit of liability of $1,000.[17]

22.    The limits of liability are increased to account for inflation.[18]

**C.    Morrison Files a Claim.**

23.    On or around October 21, 2019, Morrison promptly submitted a claim to SFL, claiming under the Policy coverage for losses arising out of the tornado. SFL assigned her claim number 53-02W4-82K.

24.    On or around November 15, 2019, Morrison received from SFL $15,000, which Morrison understands was intended to serve as a partial payment for her loss of personal property.

25.    Later, Morrison completed and submitted to SFL, what SFL calls, a "Personal Property Customer Worksheet." In the excel spreadsheet, she claimed loss of nearly 141 items of personal property. For each item, she indicated when relevant the (1) room in which the property was located, (2) brand or manufacturer, (3) model number, (4) item description, (5) quantity, (6) age, (7) condition, and (8) pre-tax replacement cost. Using those inputs, a formula devised by SFL

---

[13] H6-2143 at 37 (cleaned up).

[14] H6-2143 at 5.

[15] HO-2000 at 2.

[16] H6-2143 at 8-9.

[17] HO-2000 at 2.

[18] H6-2143 at 12.

in the spreadsheet generates a cost of each item and a total estimated replacement cost. Based on Morrison's inputs, SFL estimated a total replacement cost of $67,175.

**D.    SFL Wrongfully Denies Coverage.**

26.    Under the Policy, Morrison's losses relating to building property, personal property, jewelry, and loss assessment are entitled to coverage, and the tornado is an insured loss. No policy exclusion applies.

27.    In December 2020, Morrison spoke with Nelson White, who she understands to be a SFL claims adjustor. White told Morrison that SFL would not pay more than $15,000 for Morrison's loss of personal property and jewelry.

28.    SFL has to date paid only $15,000 for loss of personal property and jewelry, leaving amounts up to the limits of liability due and owing under the Policy. SFL has paid nothing for losses relating to building property and loss assessment, leaving amounts up to the limits of liability due and owing under the Policy.

**VI.    CAUSES OF ACTION**

**COUNT I**
**(Common-Law Breach of Contract)**

29.    Morrison repeats and realleges the allegations set forth in the foregoing paragraphs of this Petition as if fully set forth herein.

30.    The Policy constitutes a valid and enforceable contract between Morrison, as the "Named Insured," and SFL, as the "Company."

31.    As described above, Morrison has sustained losses covered under the Policy and during the Policy period.

32.     Morrison provided prompt notice of her losses; performed all obligations required of her under the Policy; or was ready, willing, and able to perform her obligations under the Policy at the time SFL denied coverage in or around December 2020.

33.     Under the terms of the Policy, SFL must pay up to the limits of liability for any loss covered under the Policy, subject only to the deductible and any sub-limits for specific coverages.

34.     As to losses of personal property and jewelry, the representation from White to Morrison was a clear expression that SFL will not perform its obligation to provide full coverage to Morrison under the Policy and in breach of the Policy.

35.     SFL has paid only $15,000 in connection with Morrison's loss of personal property and jewelry.

36.     As a direct and proximate result of SFL's breach of contract, Morrison has suffered and will continue to suffer damages in an amount to be determined at trial, plus attorneys' fees and pre- and post-judgment interest to the extent permitted by law.

## COUNT II
### (Declaratory Judgment)

37.     Morrison repeats and realleges the allegations set forth in the foregoing paragraphs of this Petition as if fully set forth herein.

38.     SFL disputes, or Morrison reasonably believes SFL will dispute, SFL's legal obligation to pay Morrison's claim. As to personal property and jewelry, SFL has affirmatively declined to cover all losses up to the limits of liability. As to losses relating to building property and loss assessment, SFL's failure to pay any amounts in the roughly two years since the tornado's impact indicates that SFL will never pay for any such losses.

39.     Morrison seeks a declaration by this Court of SFL's obligations under its Policy, including the fact of coverage, the amount of coverage, and the inapplicability of any exclusion.

40.    An actionable and justiciable controversy exists or will exist between Morrison and SFL concerning the proper construction of the Policy, and the rights and obligations of the parties thereto, with respect to Morrison's claim for losses arising out of the tornado.

41.    A declaratory judgment will be useful in resolving this case or controversy. By clarifying the parties' rights and duties under the Policy, a declaratory judgment will guide SFL's treatment of Morrison's claim, especially if SFL has not yet affirmatively denied coverage for certain losses.

## VII.    JURY DEMAND

42.    Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that Defendant be cited to appear and answer and that on final trial of this matter, the Court enter judgment, awarding Plaintiff:

(1)    Declaratory relief against Defendant on the causes of action alleged herein;

(2)    Monetary relief;

(3)    Prejudgment interest at the legal rate on all liquidated damages and postjudgment interest at the legal rate after entry of judgment;

(4)    Costs of suit;

(5)    Attorneys' fees; and

(6)    Any other relief at law or equity to which Plaintiff is entitled.

Dated: October 20, 2021                    By:    */s/ Patrick Pijls*_____

Patrick Pijls
Texas Bar No. 24118501
ppijls@mckoolsmith.com
**McKool Smith PC**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEY   FOR   PLAINTIFF
DORIS L. MORRISON**

# EXHIBIT A

# HO-2000

**State Farm Lloyds**
*A Stock Company With Home Offices in Bloomington, Illinois*

8900 Amberglen Boulevard
Austin, TX 78729-1110



AT2         H-25-2030-FB31  F H 6
    000996 3200
MORRISON, DORIS L
11224 PARK CENTRAL PL APT A
DALLAS TX  75230-3303



ST-
0106-0000

# RENEWAL DECLARATIONS

| AMOUNT DUE: | **None** |
|---|---|
| **Payment is due by  BILLED THROUGH SFPP** | |

**Policy Number:**    53-NJ-9952-4

**Policy Period:**  12 Months
**Effective Dates:** MAR 23 2019 to MAR 23 2020
The policy period begins and ends at 12:01 am standard time at the residence premises.

**Condominium Unitowners Policy**

**Location of Residence Premises**
11224 PARK CENTRAL PL APT A
DALLAS TX  75230-3303

**Your State Farm Agent**
MIKE MILLER-JR
1550 W BAY AREA BLVD STE 100
FRIENDSWOOD TX   77546-2666

**Phone:** (281) 486-8950  or  (281) 486-0012

| Construction: | Masonry Veneer |
|---|---|
| Year Built: | 1967 |

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lien-holder written notice in compliance with the policy provisions or as required by law.

## IMPORTANT MESSAGES

NOTICE: You will be receiving a second envelope that will contain your new Policy Booklet and Important Notice Regarding your New Policy.  Please call your agent if you have any questions.
NOTICE: Information concerning changes in your coverage is included. Please call your agent if you have any questions.
THIS POLICY CONTAINS A POLLUTION EXCLUSION (INCLUDING BUT NOT LIMITED TO ASBESTOS AND LEAD) LOCATED UNDER SECTION II - EXCLUSIONS.
The Inflation Coverage provision may change your deductible. Refer to page 12 of your policy.

## PREMIUM

| | |
|---|---|
| Annual Premium | $718.00 |
| Water Damage | 20.00 |
| FAIR Plan Assmt | 1.41 |
| *Your premium has already been adjusted by the following:* | |
| Home Alert Discount                Renewal Discount | |
| Home/Auto Discount | |

| **Total Premium** | **$738.00** |
|---|---|

Prepared   FEB 04 2019
HO-2000
007396   420
N    C,BX,GB,H5

*Thanks for letting us serve you.  We appreciate our long term customers.*

(o1F1080B)  04-04-2016



| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS | |
|---|---|---|
| MORRISON, DORIS L | **Mortgagee**<br>PNC BANK NATIONAL ASSOCIATION<br>ISAOA<br>PO BOX 7433<br>SPRINGFIELD OH  45501-7433 | Loan Number :<br>0006283959 |
| | PARK CENTRAL CONDOMINIUM<br>ASSOCIATION<br>CLASSIC PROPERTY MGMT<br>PO BOX 201502<br>ARLINGTON TX  76006-1502 | Loan Number :<br>N/A |

### SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Building Property | $    82,400 |
| B Personal Property | $    37,500 |
| C Loss of Use | $    15,000 |
| D Loss Assessment | $     1,000 |

**Additional Coverages**

| | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage B amount/$750 per item |

### SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $   100,000 |
| Damage to the Property of Others | $     1,000 |
| M Medical Payments to Others (Each Person) | $     1,000 |

### INFLATION

Inflation Coverage Index: 252.9

### DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| All Losses | $     1,000 |

### LOSS SETTLEMENT PROVISIONS

Replacement Cost - Similar Construction - Coverage A
B1 Limited Replacement Cost - Coverage B

FEB 04 2019

a1f11081A

**53-NJ-9952-4**



### FORMS, OPTIONS, AND ENDORSEMENTS

| | |
|---|---|
| H6-2143 | Condominium Unitowners Policy |
| Option JF | *Jewelry and Furs $1,500 Each Article/$2,500 Aggregate |
| HO-2597 | *Water Damage Endorsement |
| | *New Form Attached |

### ADDITIONAL MESSAGES

State Farm® works hard to offer you the best combination of price, service, and protection. The amount you pay for homeowners insurance is determined by many factors such as the coverages you have, the type of construction, the likelihood of future claims, and information from consumers reports.

**Other limits and exclusions may apply - refer to your policy**

Your policy consists of these Declarations, the Condominium Unitowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by State Farm Lloyds, Inc.

SERVICE OF PROCESS - Service of Process may be had upon the State Official duly designated for such purpose in the state in which the property insured hereunder is located if State Farm Lloyds is licensed in such state; or upon the Commissioner of Insurance of the State of Texas; or upon the duly appointed Attorney-in-Fact for State Farm Lloyds at Dallas, Texas. Underwriters at State Farm Lloyds have complied with the laws of the State of Texas regulating Lloyds plan insurance and said statutes are hereby made a part of the policy. The entire assets of State Farm Lloyds supports its policies, but each individual underwriter's liability is several and not joint and is limited by law to the amount fixed by his/her underwriter's contract and subscription and no underwriter is liable as a partner. This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no agent or other representative of State Farm Lloyds shall have the power to waive any provision or condition of this policy. This policy is non-assessable and no contingent liability of any kind and character attaches to the insured named herein.

In Witness Whereof, State Farm Lloyds has caused this policy to be signed by its President and Secretary.

State Farm Lloyds

By:

Secretary
State Farm Lloyds, Inc.
Attorney-in-Fact

President
State Farm Lloyds, Inc.
Attorney-In-Fact

**State Farm®**

**Your coverage amount....**

It is up to you to choose the coverage and limits that meet your needs. We encourage you to periodically review your coverages and limits with your agent.

EB 04 2019

oIfIt8IfA

HO-2000

3-NJ-9952-4     398

HO-2597C
Page 1 of 3

# IMPORTANT NOTICE



Effective with this policy term, **HO-2597 WATER DAMAGE ENDORSEMENT** replaces **FE-5369.2 WATER DAMAGE ENDORSEMENT**.

This notice summarizes the changes being made to your policy. Please read the new endorsement carefully and note the following changes:

### POTENTIAL REDUCTIONS IN COVERAGE

Although not intended to change coverage, this change could potentially reduce or eliminate coverage depending on how it is interpreted and, in that regard, should be viewed as either an actual or potential reduction in or elimination of coverage.

- Under **SECTION I – ADDITIONAL COVERAGES**, we have added language to the **Water Damage Coverage** area of the endorsement.
  - o We will pay for damages resulting from the continuous or repeated seepage or leakage of water or steam that is continuous, repeating, gradual, intermittent, slow, or trickling from a heating, air conditioning, automatic fire protection sprinkler, household appliance, or plumbing system.
  - o We will not pay for fungus which is the result of continuous or repeated seepage or leakage of water or steam that is continuous, repeating, gradual, intermittent, slow, or trickling.
- Under **SECTION I – LOSSES INSURED COVERAGE B – PERSONAL PROPERTY**, item 12. **Abrupt and accidental discharge or overflow** language has been revised to provide that this peril does not include loss:
  - o Caused by or resulting from the pressure from or presence of tree, shrub, or plant roots; or
  - o That occurs or develops over a period of time and is caused by or is resulting from:
    - - Condensation or the presence of humidity, moisture, or vapor; or
    - - Seepage or leakage of water, steam, or sewage that is continuous, repeating, gradual, intermittent, slow, or trickling.
- Under **SECTION I – LOSSES INSURED COVERAGE B – PERSONAL PROPERTY**, item 13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** language has been revised to provide that this peril does not include loss that occurs or develops over a period of time and is caused by or is resulting from:
  - o Condensation or the presence of humidity, moisture, or vapor; or
  - o Seepage or leakage of water, steam, or sewage that is continuous, repeating, gradual, intermittent, slow, or trickling.
- Under **SECTION I – LOSSES NOT INSURED**, item 1.f., language has been revised to emphasize that continuous, repeating, gradual, intermittent, slow, or trickling seepage or leakage of water, steam, or sewage from a household appliance or heating, air conditioning, automatic fire protection sprinkler, or plumbing systems, occurring or developing over a period of time, is excluded from coverage. Any loss arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time is also excluded from coverage.

Endorsement **HO-2597 WATER DAMAGE ENDORSEMENT** follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is a general description of coverage and/or coverage changes and is not a statement of contract. This message does not change, modify, or invalidate any of the provisions, terms, or conditions of your policy, or any other applicable endorsements.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HO-2597C
Page 2 of 3

# HO-2597 WATER DAMAGE ENDORSEMENT

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY and CONDOMINIUM UNITOWNERS POLICY

**SECTION I – ADDITIONAL COVERAGES**

The following is added:

**Water Damage Coverage.**

1. *We* will pay for the deterioration, wet rot or dry rot of property described in Coverage A and Coverage B caused by the continuous or repeated seepage or leakage of water or steam that is continuous, repeating, gradual, intermittent, slow, or trickling from a:

    a. heating, air conditioning or automatic fire protective sprinkler system;

    b. household appliance; or

    c. plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

    This coverage includes the cost of tearing out and replacing only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which seepage or leakage occurred.

2. *We* will not pay for:

    a. loss to the system or appliance from which the water or steam escaped;

    b. loss caused by, consisting of, or resulting from *fungus*; or

    c. *fungus* which is the result of continuous or repeated seepage or leakage of water or steam that is continuous, repeating, gradual, intermittent, slow, or trickling from a:

        (1) heating, air conditioning or automatic fire protective sprinkler system;

        (2) household appliance; or

        (3) plumbing system, including from, within, or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

**SECTION I – LOSSES INSURED**

**COVERAGE B – PERSONAL PROPERTY**

The following revisions are made for the purpose of this endorsement only.

Item 12. is replaced with the following:

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

    Except as specifically provided by this endorsement, this peril does not include loss:

    a. to the system or appliance from which the water, steam, or sewage escaped;

    b. caused by or resulting from:

        (1) freezing, except as specifically provided in **SECTION I – LOSSES INSURED, Freezing**;

        (2) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

        (3) the pressure from or presence of tree, shrub, or plant roots; or

    c. that occurs or develops over a period of time and is caused by or resulting from:

        (1) condensation or the presence of humidity, moisture, or vapor; or

        (2) seepage or leakage of water, steam, or sewage that is:

            (a) continuous;

            (b) repeating;

            (c) gradual;

            (d) intermittent;

            (e) slow; or

            (f) trickling.

Item 13. is replaced with the following:

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

    Except as specifically provided by this endorsement, this peril does not include loss:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

53-NJ-9952-4        007399

a.   caused by or resulting from freezing, except as specifically provided in **SECTION I – LOSSES INSURED**, **Freezing**; or

b.   that occurs or develops over a period of time and is caused by or resulting from:

   (1)   condensation or the presence of humidity, moisture, or vapor; or

   (2)   seepage or leakage of water or steam that is:

      (a)   continuous;

      (b)   repeating;

      (c)   gradual;

      (d)   intermittent;

      (e)   slow; or

      (f)   trickling.

## SECTION I – LOSSES NOT INSURED

The following revisions are made for the purposes of this endorsement only.

Item 1.f. is replaced with the following:

f.   except as specifically provided by this endorsement, seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

   (1)   and is:

      (a)   continuous;

      (b)   repeating;

HO-2597

      (c)   gradual;

      (d)   intermittent;

      (e)   slow; or

      (f)   trickling; and

   (2)   from a:

      (a)   heating, air conditioning, or automatic fire protective sprinkler system;

      (b)   household appliance; or

      (c)   plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

   *We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time;

Item 1.g. is replaced with the following:

g.   wear, tear, marring, scratching, inherent vice, latent defect or mechanical breakdown;

Item 1.i. is deleted.

Item 1. k. is replaced with the following:

k.   settling, cracking, shrinking, bulging, or expansion of pavements, patios or foundations (including slabs, basement walls, crawl space walls, and footings);

Except as stated in this endorsement *we* will not pay for any loss described in **SECTION I – LOSSES NOT INSURED**.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

53-NJ-9952-4          007400

553-3107 TX.5

# Important Notice About Your Policy



Thank you for selecting State Farm® insurance.

To complete the renewal of your policy, we may obtain and use credit information on you or another member(s) of your household as a part of the insurance credit scoring process.

This information may be used in determining the price you are being charged. If credit information was used to complete the renewal of your policy, the name of the person whose credit information was obtained will be shown on your Renewal Declarations.

If you have questions about this disclosure, contact your State Farm agent. Your agent's address and phone number are listed on the front of your Renewal Declarations. You may also contact the Texas Consumer Hot Line at:

> 1-800-STATEFARM (1-800-782-8332)
> State Farm Lloyds
> CityLine Operations Center
> 1251 State Street, Suite 1000
> P.O. Box 853907
> Richardson, Texas 75085-3907

For more information or other questions, contact the Texas Department of Insurance at:

> Texas Department of Insurance
> 1-800-252-3439
> P.O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 490-1007
> Web: www.tdi.texas.gov
> E-mail: ConsumerProtection@tdi.texas.gov
> Other Information: www.helpinsure.com

Section 559.053 of the Texas Insurance Code requires an insurer or its agents to disclose to its customers whether credit information will be obtained on the applicant or insured or on any other member(s) of the applicant's or insured's household and used as part of the insurance credit scoring process.

If credit information is obtained or used on the applicant or insured, or on any member of the applicant's or insured's household, the insurer shall disclose to the applicant the name of each person on whom credit information was obtained or used and how each person's credit information was used to underwrite or rate the policy. An insurer may provide this information with this disclosure or in a separate notice.

Adverse effect means an action taken by an insurer in connection with the underwriting of insurance for a consumer that results in the denial of coverage, the cancellation or nonrenewal of coverage, or the offer to and acceptance by a consumer of a policy form, premium rate, or deductible other than the policy form, premium rate, or deductible for which the consumer specifically applied.

Credit information is any credit-related information derived from a credit report itself, or provided in an application for personal insurance. The term does not include information that is not credit-related, regardless of whether the information is contained in a credit report or in an application for insurance coverage or is used to compute a credit score.

Credit score or insurance score is a number or rating derived from a mathematical formula, computer application, model, or other process that is based on credit information and used to predict the future insurance loss exposure of a consumer.

**SUMMARY OF CONSUMER PROTECTIONS CONTAINED IN CHAPTER 559**

**PROHIBITED USE OF CREDIT INFORMATION.** An insurer may not:

1. use a credit score that is computed using factors that constitute unfair discrimination;

2. deny, cancel, or nonrenew a policy of personal insurance solely on the basis of credit information without consideration of any other applicable underwriting factor independent of credit information; or

3. take an action that results in an adverse effect against a consumer because the consumer does not have a credit card account without consideration of any other applicable factor independent of credit information.

*(Continued)*

An insurer may not consider an absence of credit information or an inability to determine credit information for an applicant for insurance coverage or insured as a factor in underwriting or rating an insurance policy unless the insurer:

1. has statistical, actuarial, or reasonable underwriting information that:

    (A) is reasonably related to actual or anticipated loss experience; and

    (B) shows that the absence of credit information could result in actual or anticipated loss differences;

2. treats the consumer as if the applicant for insurance coverage or insured had neutral credit information, as defined by the insurer; or

3. excludes the use of credit information as a factor in underwriting and uses only other underwriting criteria.

**NEGATIVE FACTORS.** An insurer may not use any of the following as a negative factor in any credit scoring methodology or in reviewing credit information to underwrite or rate a policy of personal insurance:

1. a credit inquiry that is not initiated by the consumer;

2. an inquiry relating to insurance coverage, if so identified on a consumer's credit report; or

3. a collection account with a medical industry code, if so identified on the consumer's credit report.

Multiple lender inquiries made within 30 days of a prior inquiry, if coded by the consumer reporting agency on the consumer's credit report as from the home mortgage or motor vehicle lending industry, shall be considered by an insurer as only one inquiry.

**EFFECT OF EXTRAORDINARY EVENTS.** An insurer shall, on written request from an applicant for insurance coverage or an insured, provide reasonable exceptions to the insurer's rates, rating classifications, or underwriting rules for a consumer whose credit information has been directly influenced by a catastrophic illness or injury, by the death of a spouse, child, or parent, by temporary loss of employment, by divorce, by military deployment overseas or by identity theft. In such a case, the insurer may consider only credit information not affected by the event or shall assign a neutral credit score.

An insurer may require reasonable written and independently verifiable documentation of the event and the effect of the event on the person's credit before granting an exception. An insurer is not required to consider repeated events or events the insurer reconsidered previously as an extraordinary event.

An insurer may also consider granting an exception to an applicant for insurance coverage or an insured for an extraordinary event not listed in this section. An insurer is not out of compliance with any law or rule relating to underwriting, rating, or rate filing as a result of granting an exception under this article.

**NOTICE OF ACTION RESULTING IN ADVERSE EFFECT.** If an insurer takes an action resulting in an adverse effect with respect to an applicant for insurance coverage or insured based in whole or in part on information contained in a credit report, the insurer must provide to the applicant or insured within 30 days certain information regarding how an applicant or insured may verify and dispute information contained in a credit report.

**DISPUTE RESOLUTION; ERROR CORRECTION.** If it is determined through the dispute resolution process established under Section 611(a)(5), Fair Credit Reporting Act (15 U.S.C. Section 1681i), as amended, that the credit information of a current insured was inaccurate or incomplete or could not be verified and the insurer receives notice of that determination from the consumer reporting agency or from the insured, the insurer shall re-underwrite and re-rate the insured not later than the 30th day after the date of receipt of the notice.

After re-underwriting or re-rating the insured, the insurer shall make any adjustments necessary within 30 days, consistent with the insurer's underwriting and rating guidelines. If an insurer determines that the insured has overpaid premium, the insurer shall credit the amount of overpayment. The insurer shall compute the overpayment back to the shorter of the last 12 months of coverage; or the actual policy period.

State Farm Lloyds
Richardson, TX

**553-3107 TX.5**

(CONTINUED)

53-NJ-9952-4      007401

553-3653 TX.3

# IMPORTANT NOTICE

To obtain information or make a complaint:

You may call the State Farm® toll-free telephone number for information or to make a complaint at:

**800-STATEFARM (1-800-782-8332)**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
Fax:  (512) 490-1007
Web:  www.tdi.texas.gov
E-mail:  ConsumerProtection@tdi.texas.gov

To obtain price and policy form comparisons and other information relating to residential property insurance and personal automobile insurance, you may visit the Texas Department of Insurance/ Office of Public Insurance Counsel website:

**www.helpinsure.com**

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

553-3653 TX.3 (C)

# AVISO IMPORTANTE

Para obtener información o para presentar una queja:

Usted puede llamar al número de teléfono gratuito de State Farm® para obtener información o para presentar una queja al:

**800-STATEFARM (800-782-8332)**

Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos o quejas al:

**1-800-252-3439**

Usted puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
Fax:  (512) 490-1007
Web:  www.tdi.texas.gov
E-mail:  ConsumerProtection@tdi.texas.gov

Para obtener formas para la comparación de precios y pólizas y para obtener otra información sobre el  seguro de propiedad residencial y de seguro de automóvil personal, visite el sitio web del Departamento de Seguros de Texas/Oficina del Asesor Público de Seguros:

**www.helpinsure.com**

**DISPUTAS SOBRA PRIMAS DE O RECLAMACIONES:**
Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con el agente primero.  Si la disputa no es resuelta, puede comunicarse con Departamento de Seguros de Texas.

**ADJUNTE ESTE AVISO A SU PÓLIZA:**
Este aviso es solamente para propósito de informativos y no se convierte en parte o en condición del documento adjunto.

(CONTINUED)

553-3797 TX.3

## IMPORTANT NOTICE

The following information is being provided in accordance with Texas law.

Your policy includes provisions under SECTION I – CONDITIONS that state:

- You must file a claim with us not later than one year after the date of the loss that is the subject of the claim unless you show good cause for not filing the claim within this time period.  Good cause means objective facts beyond your control that reasonably caused you to fail to file a claim under the policy within the one-year claim-filing deadline.  If good cause is shown, we may extend the one-year claim-filing period.

- With respect to a loss caused by windstorm or hail in the catastrophe area as defined under Texas law, no suit or action may be brought against us unless it is started within the earlier of:

  - two years from the date we accept or reject the claim; or
  - three years from the date of the loss that is the subject of the claim.

  ***This Notice is provided for informational purposes only, and it does not change, modify or invalidate any of the provisions, terms or conditions of your policy, or any other applicable endorsements.***

**553-3797 TX.3 (C)**

553-4157

## NOTICE TO POLICYHOLDER

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes that you requested before the "Date Prepared" on your Renewal Declarations are effective on the renewal date of this policy unless indicated otherwise by a separate endorsement, binder or Amended Declarations Page.  Any coverage forms or endorsements included with your Renewal Declarations are effective on the renewal date of this policy.

Policy changes that you requested after the "Date Prepared" on your Renewal Declarations will be sent to you as an Amended Declarations Page or as an endorsement to your policy.  You will be billed for any resulting premium increase later.

If you have acquired any valuable property items, made any improvements to your home, or have questions about your insurance coverage, please contact your State Farm® agent.

**553-4157 (C)**

**State Farm Lloyds**
*A Stock Company With Home Offices in Bloomington, Illinois*

8900 Amberglen Boulevard
Austin, TX 78729-1110

 **State Farm**®

```
AT1         H-25-2030-FB31  F H 6
     003857 3200
PARK CENTRAL CONDOMINIUM
ASSOCIATION
C/O CLASSIC PROPERTY MGMT
PO BOX 201502
ARLINGTON TX  76006-1502
```

ST-
0102-0000

## RENEWAL DECLARATIONS

---

**AMOUNT DUE:**                                **None**
**Payment is due by  BILLED THROUGH SFPP**

---

**Policy Number:**      53-NJ-9952-4

**Policy Period:**   12 Months
**Effective Dates:** MAR 23 2019 to MAR 23 2020
The policy period begins and ends at 12:01 am standard
time at the residence premises.

### Condominium Unitowners Policy

**Location of Residence Premises**
11224 PARK CENTRAL PL APT A
DALLAS TX  75230-3303

**Your State Farm Agent**
MIKE MILLER-JR
1550 W BAY AREA BLVD STE 100
FRIENDSWOOD TX    77546-2666

**Phone:** (281) 486-8950  or  (281) 486-0012

| | |
|---|---|
| **Construction:** | Masonry Veneer |
| **Year Built:** | 1967 |

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lien-holder written notice in compliance with the policy provisions or as required by law.

## IMPORTANT MESSAGES

THIS POLICY CONTAINS A POLLUTION EXCLUSION (INCLUDING BUT NOT LIMITED TO ASBESTOS AND LEAD) LOCATED UNDER SECTION II - EXCLUSIONS.
The Inflation Coverage provision may change your deductible. Refer to page 12 of your policy.

## PREMIUM

| | |
|---|---:|
| Annual Premium | $718.00 |
| Water Damage | 20.00 |
| FAIR Plan Assmt | 1.41 |
| *Your premium has already been adjusted by the following:* | |
| Home Alert Discount          Renewal Discount | |
| Home/Auto Discount | |

| | |
|---|---:|
| **Total Premium** | **$738.00** |

---

Prepared   FEB 04 2019

HO-2000
025709  920
N

*Thanks for letting us serve you.  We appreciate our long term customers.*

Page  1 of  3

(o1F1080B)  04-04-2016



| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS | |
|---|---|---|
| MORRISON, DORIS L | **Mortgagee** | |
| | PNC BANK NATIONAL ASSOCIATION ISAOA PO BOX 7433 SPRINGFIELD OH  45501-7433 | Loan Number : 0006283959 |
| | PARK CENTRAL CONDOMINIUM ASSOCIATION CLASSIC PROPERTY MGMT PO BOX 201502 ARLINGTON TX  76006-1502 | Loan Number : N/A |

## SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Building Property | $          82,400 |
| B Personal Property | $          37,500 |
| C Loss of Use | $          15,000 |
| D Loss Assessment | $            1,000 |

| **Additional Coverages** | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage B amount/$750 per item |

## SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $          100,000 |
| Damage to the Property of Others | $              1,000 |
| M Medical Payments to Others (Each Person) | $              1,000 |

## INFLATION

Inflation Coverage Index: 252.9

## DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| All Losses | $            1,000 |

## LOSS SETTLEMENT PROVISIONS

Replacement Cost - Similar Construction - Coverage A
B1 Limited Replacement Cost - Coverage B

FEB 04 2019

oIf1080A

**53-NJ-9952-4**

&⊗ **State Farm®**

## FORMS, OPTIONS, AND ENDORSEMENTS

| | |
|---|---|
| H6-2143 | Condominium Unitowners Policy |
| Option JF | Jewelry and Furs $1,500 Each |
| | Article/$2,500 Aggregate |
| HO-2597 | Water Damage Endorsement |

## ADDITIONAL MESSAGES

State Farm® works hard to offer you the best combination of price, service, and protection. The amount you pay for homeowners insurance is determined by many factors such as the coverages you have, the type of construction, the likelihood of future claims, and information from consumers reports.

**Other limits and exclusions may apply - refer to your policy**

Your policy consists of these Declarations, the Condominium Unitowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by State Farm Lloyds, Inc.

SERVICE OF PROCESS - Service of Process may be had upon the State Official duly designated for such purpose in the state in which the property insured hereunder is located if State Farm Lloyds is licensed in such state; or upon the Commissioner of Insurance of the State of Texas; or upon the duly appointed Attorney-in-Fact for State Farm Lloyds at Dallas, Texas. Underwriters at State Farm Lloyds have complied with the laws of the State of Texas regulating Lloyds plan insurance and said statutes are hereby made a part of the policy. The entire assets of State Farm Lloyds supports its policies, but each individual underwriter's liability is several and not joint and is limited by law to the amount fixed by his/her underwriter's contract and subscription and no underwriter is liable as a partner. This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no agent or other representative of State Farm Lloyds shall have the power to waive any provision or condition of this policy. This policy is non-assessable and no contingent liability of any kind and character attaches to the insured named herein.

In Witness Whereof, State Farm Lloyds has caused this policy to be signed by its President and Secretary.

State Farm Lloyds

By:

_(signature)_

Secretary
State Farm Lloyds, Inc.
Attorney-in-Fact

_(signature)_

President
State Farm Lloyds, Inc.
Attorney-In-Fact

H6-2143



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.



State Farm®
**Condominium Unitowners Policy**

**Texas**
H6-2143

## CONDOMINIUM UNITOWNERS POLICY

## TABLE OF CONTENTS

AGREEMENT ............................................. 1

DEFINITIONS ............................................ 1

DEDUCTIBLE ............................................ 5

SECTION I – PROPERTY COVERAGES ................. 5

  COVERAGE A – BUILDING PROPERTY ............ 5

    Building Property ................................. 5

    Property Not Covered ............................ 5

  COVERAGE B – PERSONAL PROPERTY .......... 5

    Property Covered ................................ 5

    Special Limits of Liability ....................... 6

    Property Not Covered ........................... 6

  COVERAGE C – LOSS OF USE .................... 7

    Additional Living Expense ....................... 8

    Fair Rental Value ................................ 8

    Prohibited Use .................................. 8

  COVERAGE D – LOSS ASSESSMENT ............ 8

  SECTION I – ADDITIONAL COVERAGES .......... 9

    Debris Removal ................................. 9

    Temporary Repairs .............................. 9

    Trees, Shrubs, and Landscaping ................ 9

    Property Removed .............................. 9

    Credit Card, Bank Fund Transfer Card,
    Forgery, and Counterfeit Money ................. 9

    Power Interruption .............................. 10

    Refrigerated Products ........................... 10

    Arson Reward ................................... 10

    Volcanic Action ................................. 10

    Collapse ........................................ 10

    Locks and Remote Devices ...................... 11

    Fuel Oil Release ................................ 11

    Tear Out ........................................ 11

  INFLATION COVERAGE .......................... 12

SECTION I – LOSSES INSURED .......................... 12

  COVERAGE A – BUILDING PROPERTY AND
  COVERAGE D – LOSS ASSESSMENT ............ 12

  COVERAGE B – PERSONAL PROPERTY ........ 12

SECTION I – LOSSES NOT INSURED .................. 15

SECTION I – LOSS SETTLEMENT ..................... 18

  COVERAGE A – BUILDING PROPERTY .......... 18

  COVERAGE B – PERSONAL PROPERTY ........ 19

    B1 – Limited Replacement Cost Loss
    Settlement ...................................... 19

    B2 – Depreciated Loss Settlement ............. 19

SECTION I – CONDITIONS ............................. 20

  Insurable Interest and Limit of Liability ............ 20

  Your Duties After Loss ............................. 20

  Loss to a Pair or Set .............................. 21

  Appraisal ......................................... 21

  Other Insurance ................................... 22

  Suit Against Us .................................... 22

  Our Option ........................................ 23

  Loss Payment ..................................... 23

  Abandonment of Property .......................... 23

  Mortgagee Clause ................................. 23

  No Benefit to Bailee ............................... 24

  Residential Community Property Clause ............ 24

  Our Duties After Loss ............................. 24

  Catastrophe Claims ............................... 24

  Recovered Property ............................... 24

  Assignment of Claim .............................. 24

  Glass Replacement ............................... 24

SECTION II – LIABILITY COVERAGES ............... 25

  COVERAGE L – PERSONAL LIABILITY .......... 25

  COVERAGE M – MEDICAL PAYMENTS TO
  OTHERS ........................................ 25

  SECTION II – ADDITIONAL COVERAGES ........ 25

    Claim Expenses ................................. 25

    First Aid Expenses .............................. 25

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

Damage to Property of Others ...................25
**SECTION II – EXCLUSIONS**....................................26
**SECTION II – CONDITIONS** ....................................30
Limit of Liability ....................................................30
Severability of Insurance.......................................30
Duties After Loss...................................................30
Coverage M Requirements ...................................31
Payment of Claim – Coverage M or Damage
to Property of Others ............................................31
Suit Against Us .....................................................31
Bankruptcy of an Insured .....................................31
Other Insurance – Coverage L..............................31
Notice of Settlement of Liability Claim ..................31
**SECTION I AND SECTION II – CONDITIONS**.........31
Policy Period .........................................................31
Concealment or Fraud ..........................................31
Liberalization Clause.............................................31
Waiver or Change of Policy Provisions.................32
Cancellation ..........................................................32
Nonrenewal...........................................................32

Assignment of Policy ............................................ 33
Subrogation and Reimbursement......................... 33
Death..................................................................... 33
Conformity to State Law ....................................... 33
Premium ................................................................ 33
Right to Inspect .................................................... 34
Change of Policy Address .................................... 34
Electronic Delivery................................................ 34
Duties Regarding Claim Information ..................... 34
**OPTIONAL POLICY PROVISIONS** ........................ 35
Option AI – Additional Insured............................. 35
Option BP – Business Property............................. 35
Option BU – Business Pursuits ............................ 35
Option FA – Firearms ........................................... 35
Option IO – Incidental Business ........................... 36
Option JF – Jewelry and Furs .............................. 37
Option SG – Silverware and Goldware
Theft ..................................................................... 37

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

## CONDOMINIUM UNITOWNERS POLICY

## AGREEMENT

*We* agree to provide the insurance described in this policy:

1. based on *your* payment of premium, in a form acceptable to *us*, for the coverages *you* chose;

2. based on *your* compliance with all applicable provisions of this policy; and

3. based on the information *you* have given *us* and *your* statements in this agreement.

*You* agree, by acceptance of this policy, that:

1. *you* will pay premiums when due and comply with the provisions of this policy;

2. the statements in this agreement are *your* statements and are true;

3. *we* insure *you* on the basis *your* statements are true; and

4. this policy contains all of the agreements between *you* and *us.* No other agreements apply to this insurance.

When *you* request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, *we* may adjust the premium in accordance with the change during the policy period and *you* must pay any additional premium due within the time *we* specify.

## DEFINITIONS

*We* define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.

1. *"actual cash value"* means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

   a. materials, including any tax;

   b. labor, including any tax; and

   c. overhead and profit;

   are subject to depreciation.

   The depreciation deduction may include such considerations as:

   a. age;

   b. condition;

   c. reduction in useful life;

   d. obsolescence; and

   e. any pre-loss damage including wear, tear, or deterioration;

   of the damaged part of the property.

2. *"association"* means the management body of the unitowners collectively.

3. *"bodily injury"* means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

   *Bodily injury* does not include:

   a. the transmission of a *communicable disease* by any *insured* to any other person;

   b. the exposure to any *communicable disease* by any *insured* to any other person; or

   c. emotional distress, mental anguish, humiliation, mental injury, or similar injury unless it arises out of actual physical injury to some person.

4. *"building structure"* means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is currently undergoing active maintenance or repairs, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

   A *building structure* includes:

1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

a.  the foundation supporting the structure, including:

(1)  slabs;

(2)  basement walls;

(3)  crawl space walls;

(4)  footings; and

(5)  gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b.  wall-to-wall carpeting attached to the structure.

5.  *"business"* means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature.  It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an *insured's* principal means of livelihood. Profit and profit motive are irrelevant.

*Business* does not include:

a.  volunteer activities for a not-for-profit or non-profit organization or public agency for which no money is received other than payment of expenses;

b.  incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the *insured*;

c.  any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery;

d.  the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of

the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss; or

e.  ownership of the *residence premises* by the person or organization shown in the *Declarations* as Additional Insured.

6.  *"business day"* means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

7.  *"communicable disease"* means bacteria, parasite, virus or other organism commonly transmitted from person to person due to sexual contact with an affected person or that person's discharges .

8.  *"condominium"* means the *condominium*, homeowners development, planned unit development, townhouse development, cooperative development, or any similar unit development, governed by the *association* of all unitowners of which *you* are a member and in which the *residence premises* is located.

9.  *"Declarations"* means the policy *Declarations*, any amended *Declarations*, the most recent renewal *Declarations*, an Evidence of Insurance form, or any endorsement changing any of these.

10.  *"diminution in value"* means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

11.  *"dwelling"* means that part of the *building structure* on the *residence premises* used as the primary private residence.

12.  *"fungus"* means any type or form of *fungus*, including mold, mildew, mycotoxins, spores, scents, or byproducts produced or released by fungi.

13.  *"insured"* means:

a.  *you*;

b.  *your relatives*; and

c.  any other person under the age of 21 in the care of a person described above, including children in a joint custody situation even if they do not reside primarily with *you*.

Under Section II, *insured* also means:

d.  the person or organization legally responsible for animals or watercraft to which this policy applies.  However, the animal or watercraft must

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

be owned by *you* or a person included in 13.b. or 13.c. above.  A person or organization using or having custody of these animals or watercraft in the course of a *business*, or without permission of the owner, is not an *insured*; and

e.  with respect to any vehicle to which this policy applies, any person while engaged in *your* employment or the employment of a person included in 13.b. or 13.c. above.

14. *"insured location"* means:

a.  the *residence premises*;

b.  the part of any other premises, other structures, and grounds used by *you* as a residence.  This includes premises, structures, and grounds *you* acquire while this policy is in effect for *your* use as a residence;

c.  any premises used by *you* in connection with the premises included in 14.a. or 14.b. above;

d.  any part of a premises not owned by an *insured* but where an *insured* is temporarily residing;

e.  land owned by or rented to an *insured* on which a one or two family dwelling is being constructed as a residence for an *insured*;

f.  individual or family cemetery plots or burial vaults owned by an *insured*;

g.  any part of a premises occasionally rented to an *insured* for purposes other than *business*;

h.  vacant land owned by or rented to an *insured*. For the purposes of this definition, vacant land does not include:

   (1)  farm land;

   (2)  land containing a residence; or

   (3)  land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures, unless they are used solely for the personal use of the *insured*; or

i.  farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

15. *"loss insured"* means a loss as described under **SECTION I – LOSSES INSURED**, **COVERAGE A – BUILDING PROPERTY** and **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**.

16. *"motor vehicle"*, when used in Section II of this policy, means:

a.  a land *motor vehicle* designed for travel on public roads or subject to motor vehicle registration;

b.  a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c.  a "recreational or utility vehicle" while off an *insured location*.  "Recreational or utility vehicle" means a  motorized vehicle designed for recreation or utility purposes, used  principally off public roads, and that is owned or leased by an *insured*.  This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

d.  a "locomotive" while off an *insured location*. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an *insured*.  "Leased" does not include temporary rental;

e.  a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an *insured* while off an *insured location*.  "Leased" does not include temporary rental; and

f.  any vehicle while being towed or pushed by or carried on a vehicle included in 16.a. through 16.e. above.

The following are not *motor vehicles*:

a.  a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 16.a. through 16.e. above;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

b. a motorized land vehicle in storage on an *insured location* not intended to be operated for an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

c. a motorized golf cart while used for golfing purposes;

d. a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or

e. a commercially manufactured two, three, or four wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

17. *"occurrence"*, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a. *bodily injury*; or

b. *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one *occurrence*.

18. *"property damage"* means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any *insured* is not *property damage*.

19. *"relative"* means any person related to *you* by:

a. blood;

b. adoption;

c. marriage; or

d. civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

and who resides primarily with *you*.

20. *"residence employee"* means an employee of an *insured*, or an employee leased to an *insured* by a labor leasing firm under an agreement between an *insured* and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the *residence premises*. This includes employees who perform similar duties elsewhere for *you*. This does not include employees while performing duties in connection with the *business* of an *insured*.

Any employee of the *association* in the course of employment by the *association* is not a *residence employee*. This limitation does not apply to **SECTION I – PROPERTY COVERAGES**, **COVERAGE D – LOSS ASSESSMENT**.

21. *"residence premises"* means the described premises shown in the *Declarations*, other structures, and grounds reserved for *your* exclusive use and occupancy.

22. *"State Farm Companies"* means one or more of the following:

a. State Farm Mutual Automobile Insurance Company;

b. State Farm Fire and Casualty Company; and

c. subsidiaries or affiliates of either 22.a. or 22.b. above.

23. *"vacant dwelling"* means:

a. a dwelling:

(1) that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

(2) where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

A dwelling will be considered occupied only if it is being used as a habitual place of residence with *your* knowledge and approval.

b. A dwelling that is under active construction will not be considered a *vacant dwelling*. A dwelling is under active construction when it is:

(1) being built as a new structure;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

(2) being repaired due to damage otherwise covered by this policy; or

(3) undergoing substantial improvements, renovations, remodeling, or modifications;

and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods.

24. **"we"**, **"us"**, and **"our"** mean the Company shown in the *Declarations*.

25. **"you"** and **"your"** mean the person or persons shown as "Named Insured" in the *Declarations*. If a

"Named Insured" shown in the *Declarations* is a human being, then **you** and **your** include:

a. a spouse of a "Named Insured";

b. a party to a civil union with a "Named Insured";

c. a domestic partner of a "Named Insured"; or

d. a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

## DEDUCTIBLE

In case of loss under this policy, **we** will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the

*Declarations*. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – BUILDING PROPERTY

1. **Building Property. We** cover:

a. alterations, appliances, fixtures, and improvements that are part of the building contained within **your** unit;

b. items of real property that pertain exclusively to **your** unit; or

c. property that is **your** insurance responsibility under the governing rules of the *condominium*.

This coverage also includes **your** share of any *association* deductible but only when the deductible is not assessed against all unitowners.

2. **Property Not Covered. We** do not cover:

a. land, including the land necessary to support any Coverage A property. **We** also do not cover:

(1) any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

(2) the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A;

b. trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**; or

c. systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

### COVERAGE B – PERSONAL PROPERTY

1. **Property Covered.**

a. **We** cover personal property owned or used by an *insured* while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At **your** request, **we** will cover personal property:

(1) owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

(2) owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(3) owned by roomers, boarders, tenants, and other residents, any of whom are related to *you*.

b. *We* cover personal property usually located at an *insured's* residence, other than the *residence premises*, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

(1) in a newly acquired principal residence for the first 30 days after *you* start moving the property there. If the *residence premises* is a newly acquired principal residence, personal property in *your* immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

(2) of a student who is an *insured* while located at a residence away from the *residence premises*.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

b. $1,500 on property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, while on the *residence premises*. This coverage is limited to $750 on such property away from the *residence premises*.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

c. $10,000 on electronic data processing system equipment used or intended for use in a *business*, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

d. $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

e. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

f. $1,500 on trailers not used with watercraft;

g. $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

h. $2,500 for loss by theft of firearms;

i. $2,500 for loss by theft of silverware and goldware;

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

k. $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

(1) designed for assisting persons with disabilities;

(2) not designed for travel on public roads; and

(3) not subject to motor vehicle registration; and

l. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

2. **Property Not Covered. *We*** do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds, or fish;

c. any engine-propelled or motor-propelled vehicle or machine, including parts, designed for move-

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

ment on land, except as provided in **Special Limits of Liability**, item k.  However, *we* do not cover those vehicles or machines:

(1) that are:

    (a) not designed for travel on public roads; and

    (b) not subject to motor vehicle registration;

(2) and that are:

    (a) used primarily to service the *insured location*; or

    (b) designed for assisting persons with disabilities;

d. any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system.  *We* also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e. aircraft and parts.  This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f. property of roomers, boarders, tenants, and other residents not related to *you*;

g. property regularly rented or held for rental to others by an *insured*.  This does not apply to property of an *insured*:

(1) in a sleeping room when the *dwelling* is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

(2) on the *residence premises* if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h. property rented or held for rental to others away from the *residence premises*;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records.  This does not apply to any recording or storage media for electronic data processing.  *We* will cover the cost of blank books, cards, or other blank material plus the cost of labor *you* incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l. purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m. contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n. outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**;

o. electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange; or

p. personal property collectively owned by unit-owners of the *condominium*.

## COVERAGE C – LOSS OF USE

The most *we* will pay for the sum of all losses combined under **Additional Living Expense**, **Fair Rental Value**,

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

and **Prohibited Use** is the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**.

1. **Additional Living Expense.** When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

   a. the time required to repair or replace the premises;

   b. the time required for *your* household to settle elsewhere; or

   c. 24 months.

   This period of time is not limited by the expiration of this policy.

   *We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. **Prohibited Use.** *We* will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of loss that would be a *loss insured* under this policy if the damage had occurred to property on the *residence premises*;

   b. the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

   c. the action of the civil authority is taken in response to:

      (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

      (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

      (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

   *We* will not pay for loss or expense due to cancellation of a lease or agreement.

**COVERAGE D – LOSS ASSESSMENT**

*We* will pay for *your* share of any assessment charged against all unitowners by the *association*, when the assessment is made as a result of:

1. a direct physical loss to *condominium* property (including personal property) owned by all unitowners collectively that occurs during the policy period to which Section I of this policy would apply, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED**. Any Earthquake and Volcanic Explosion Endorsement applicable to Coverage A shall also apply to Coverage D;

2. an *occurrence* during the policy period to which Section II of this policy would apply;

3. damages that occur during the policy period that the *association* may be obligated to pay because of personal injury due to false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention, malicious prosecution, misrepresentation, or humiliation;

4. illegal discrimination (unless coverage is prohibited by law) that occurs during the policy period, but only with respect to liability other than fines and penalties imposed by law; or

5. libel, slander, defamation of character, or invasion of rights of privacy that occur during the policy period.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

*We* will not pay *your* share of any assessment charged against all unitowners by the *association* made as a result of items 1. through 5. above that does not occur within the policy period.

**Limit of Liability.** The **COVERAGE D – LOSS ASSESS-MENT** limit is shown in the *Declarations*. The most *we* will pay for all assessments arising out of the same event from items 1. through 5. above is the amount shown in the *Declarations*.

**SECTION I – ADDITIONAL COVERAGES**

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured*. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

    a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**.

    b. *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

        (1) the tree has caused a *loss insured* to Coverage A property; or

        (2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

            (a) the driveway, on the *residence premises*, and prevents land *motor vehicle* access to or from the *dwelling*; or

            (b) a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2. **Temporary Repairs.** If damage is caused by a *loss insured*, *we* will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs, and Landscaping.** *We* will pay for accidental direct physical loss to outdoor:

    a. trees, shrubs, live or artificial plants, and lawns;

    b. artificial grass; and

    c. hardscape property used for aesthetic purposes not permanently affixed to realty;

on the *residence premises*, caused by the following perils: **Fire or lightning**, **Explosion**, **Riot or civil commotion**, **Aircraft**, **Vehicles** (not owned or operated by a resident of the *residence premises*), **Vandalism or malicious mischief**, or **Theft**.

The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for **COVERAGE B – PERSONAL PROPERTY**. *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

4. **Property Removed.** *We* will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*. This coverage also applies to the property for up to 30 days while removed. *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

5. **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

    a. *We* will pay up to $1,000 for:

        (1) the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name. If an *insured* has not complied with all terms

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

and conditions under which the cards are is-sued, **we** will not pay for use by an **insured** or anyone else;

(2) loss to an **insured** caused by forgery or al-teration of any check or negotiable instru-ment; and

(3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

**We** will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. **We** will not pay for loss arising out of **business** pursuits or dishonesty of an **insured**.

c. Defense:

(1) **We** may make any investigation and settle any claim or suit that **we** decide is appro-priate. **Our** obligation to defend claims or suits ends when the amount **we** pay for the loss equals **our** limit of liability.

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, **we** will provide a defense. This defense is at **our** ex-pense by counsel of **our** choice.

(3) **We** have the option to defend at **our** ex-pense an **insured** or an **insured's** bank against any suit for the enforcement of pay-ment under the Forgery coverage.

6. **Power Interruption. We** will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a **loss insured** occurring on the **residence premises**. The power lines off the **residence premises** must remain ener-gized. This coverage does not increase the limit ap-plying to the damaged property.

7. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units

on the **residence premises** for loss due to power fail-ure or mechanical failure. If mechanical failure or power failure is known to **you**, all reasonable means must be used to protect the property insured from fur-ther damage or this coverage is void. Power failure or mechanical failure does not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a **loss insured**.

This coverage does not increase the limit applying to the damaged property.

8. **Arson Reward. We** will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit will not be increased regardless of the num-ber of persons providing information.

9. **Volcanic Action. We** will pay for accidental direct physical loss to a covered **building structure** or cov-ered property contained in a **building structure** re-sulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. airborne volcanic shock waves;

b. ash, dust, or particulate matter; or

c. lava flow.

**We** will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered **building structure** or cov-ered property contained in a **building structure**.

All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

10. **Collapse. We** will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a **building structure** or any part of a **building structure**.

a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a **building struc-ture** or any part of a **building structure**. Collapse does not include any of the following:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

(1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

(2) substantial structural impairment;

(3) imminent or threatened collapse;

(4) a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

(5) a part of a *building structure* that is standing even if:

(a) it has separated from another part of the *building structure*; or

(b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

b. The collapse must be directly and immediately caused by one or more of the following:

(1) perils described in **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**. These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

(2) decay or deterioration of, or damage from animals, birds, or insects to:

(a) a connector; or

(b) a structural member of a *building structure*;

The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

(3) weight of contents, equipment, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

11. **Locks and Remote Devices.** *We* will pay up to $1,000 for each loss for the reasonable expenses *you* incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

12. **Fuel Oil Release.** *We* will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only. *We* will not pay for:

a. the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b. the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

13. **Tear Out.** If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, *we* will also pay the reasonable cost *you* incur to tear out and replace only that

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

particular part of the ***building structure*** or ***condominium*** unit owned by ***you*** necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. ***We*** will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

**INFLATION COVERAGE**

The limits of liability shown in the ***Declarations*** for Coverage A and Coverage B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the ***Declarations***.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A and Coverage B separately.

The limits of liability will not be reduced to less than the amounts shown in the ***Declarations***.

If during the term of this policy the Coverage B limit of liability is changed at ***your*** request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

This Inflation Coverage provision does not apply to the limit of liability of Coverage A when both:

1. the limit of liability of Coverage B is less than $10,000; and

2. the limit of liability of Coverage A is no more than $1,000.

# SECTION I – LOSSES INSURED

**COVERAGE A – BUILDING PROPERTY AND COVERAGE D – LOSS ASSESSMENT**

***We*** will pay for accidental direct physical loss to the property described in Coverage A and Coverage D, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. Accidental means happening by chance, unexpectedly, and/or unintended from ***your*** standpoint. However, loss does not include and ***we*** will not pay for, any ***diminution in value***.

**COVERAGE B – PERSONAL PROPERTY**

***We*** will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. Accidental means happening by chance, unexpectedly, and/or unintended from ***your*** standpoint. However, loss does not include and ***we*** will not pay for, any ***diminution in value***.

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and

the rain, snow, sleet, sand, or dust enters through this opening.

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a ***building structure***.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

    a. This includes:

    (1) the impact of a vehicle;

    (2) an object propelled from the tire or body of a vehicle;

    (3) the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

    (4) a vehicle door or trunk lid being closed on personal property.

    b. This peril does not include loss:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

(1) to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

(2) caused by shifting of the load being carried in or on a vehicle; or

(3) to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

7. **Smoke**, meaning abrupt and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief**, meaning only willful and malicious damage to or destruction of property.

9. **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

This peril does not include:

a. loss of a precious or semi-precious stone from its setting;

b. loss caused by theft:

(1) committed by an *insured* or by any other person regularly residing on the *insured location*. Property of a student who is an *insured* is covered while located at a residence away from the *residence premises*, if the theft is committed by a person who is not an *insured*;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a *residence premises* rented to others:

(a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the *residence premises* is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

(b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

(c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

(d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the *residence premises* of:

(1) property while at any other residence owned, rented to, or occupied by an *insured*, except while an *insured* is temporarily residing there. Property of a student who is an *insured* is covered while at a residence away from the *residence premises*;

(2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the *residence premises* is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the *residence premises* for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing,

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

   (1) freezing, except as specifically provided in **SECTION I – LOSSES INSURED**, **Freezing**;

   (2) water or sewage from outside the ***residence premises*** plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

   (3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

   (1) condensation or the presence of humidity, moisture, or vapor; or

   (2) seepage or leakage of water, steam, or sewage that is:

     (a) continuous;

     (b) repeating;

     (c) gradual;

     (d) intermittent;

     (e) slow; or

     (f) trickling.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; except as specifically provided in **SECTION I – LOSSES INSURED**, **Freezing**; or

b. that occurs or develops over a period of time and is caused by or resulting from:

   (1) condensation or the presence of humidity, moisture, or vapor; or

   (2) seepage or leakage of water or steam that is:

     (a) continuous;

     (b) repeating;

     (c) gradual;

     (d) intermittent;

     (e) slow; or

     (f) trickling.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless ***you*** have used reasonable care to prevent freezing; or

b. loss on the ***residence premises*** unless ***you*** have used reasonable care to:

   (1) maintain heat in the ***building structure*** at 55 degrees Fahrenheit or higher; or

   (2) shut off the water supply and drain the system and appliances of water.

However, if the ***building structure*** is protected by an automatic fire protective sprinkler system, ***you*** must use reasonable care to continue the water supply and maintain heat in the ***building structure*** at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

or decrease of artificially generated electrical current. **We** will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of

a structure on the **residence premises**. **We** will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a **building structure**.

## SECTION I – LOSSES NOT INSURED

1. **We** will not pay for any loss to the property described in Coverage A and Coverage D that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES**, **Collapse**;

   b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if **you** have used reasonable care to:

      (1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

      (2) shut off the water supply and drain the system and appliances of water.

      However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the **building structure** at 55 degrees Fahrenheit or higher for coverage to apply;

   c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

      (1) a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

      (2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a **vacant dwelling**;

   f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

      (1) and is:

         (a) continuous;

         (b) repeating;

         (c) gradual;

         (d) intermittent;

         (e) slow; or

         (f) trickling; and

      (2) from a:

         (a) heating, air conditioning, or automatic fire protective sprinkler system;

         (b) household appliance; or

         (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

      **We** also will not pay for losses arising from condensation or the presence of humidity, moisture,

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

or vapor that occurs or develops over a period of time;

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h. corrosion, electrolysis, or rust;

i. wet or dry rot;

j. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**.

(1) Contaminants and pollutants include but are not limited to any:

(a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

(b) contaminants or pollutants resulting from any natural resource extraction activities; or

(c) fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES**, **Fuel Oil Release**.

(2) **We** also will not pay for:

(a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

(b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

(c) the cost of testing, monitoring, cleaning, removing, containing, treating,

detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

(3) However, **we** will pay for losses caused by:

(a) contamination from pollutants that escape from heating and air conditioning systems and appliances; or

(b) common household chemicals used to maintain the ***residence premises***;

k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

l. all animals, birds, or insects.

(1) This includes:

(a) nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

(b) costs to remove animals, birds, or insects from the covered property; and

(c) costs to prevent the animals, birds, or insects from returning to the property;

(2) However, **we** will pay for:

(a) losses caused by wild bears or deer; and

(b) the breakage of glass or safety glazing material that is a part of a ***building structure***, when caused by animals, birds, or insects; or

m. pressure from or presence of tree, shrub, or plant roots.

However, **we** will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. **We** will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. **We** will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually,

16

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

involves isolated or widespread damage, occurs on or off the *residence premises*, arises from any natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

   (1) earthquake;

   (2) landslide, mudslide, or mudflow;

   (3) sinkhole or subsidence;

   (4) movement resulting from:

       (a) improper compaction;

       (b) site selection;

       (c) natural resource extraction activities; or

       (d) excavation;

   (5) erosion;

   (6) pressure by surface or subsurface earth or fill; or

   (7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action**.

   However, *we* will pay for any accidental direct physical loss by fire resulting from earth movement, provided the resulting fire loss is itself a *loss insured*.

c. **Water**, meaning:

   (1) flood;

   (2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

   (3) waves (including tidal wave, tsunami, and seiche);

   (4) tides or tidal water;

   (5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

   (6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

   (7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

   (8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

   (9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

   However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

d. **Neglect**, meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

However, *we* will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a *loss insured*.

g.  *Fungus*, including:

(1)  any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement, by *fungus*;

(2)  any remediation of *fungus*, including the cost to:

(a)  remove the *fungus* from covered property or to repair, restore, or replace that property; or

(b)  tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus*; or

(3)  the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

However, the presence of *fungus* on covered property does not negate coverage for that part of the covered property otherwise damaged by a *loss insured*.

h.  **Intentional Losses**.  If any *insured* intentionally causes or procures a loss to property covered under this policy, *we* will not pay any *insured* for this loss.  This applies regardless of

whether the *insured* is charged with or convicted of a crime.

This does not apply to an *insured* who did not participate in, cooperate in, or contribute to causing or procuring the loss.

3.  *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a.  conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

b.  defect, weakness, inadequacy, fault, or unsoundness in:

(1)  planning, zoning, development, surveying, or siting;

(2)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(3)  materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4)  maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

c.  weather conditions.

However, *we* will pay for any resulting loss from items 3a., 3b., and 3c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

## SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply.  *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

**COVERAGE A – BUILDING PROPERTY**

1.  *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

building property covered under **SECTION I – PROP-ERTY COVERAGES**, **COVERAGE A – BUILDING PROPERTY**, except for wood fences, subject to the following:

    a.    until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property;

    b.    when the repair or replacement is actually completed, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

    c.    to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and give prompt notice to *us* after the work has been completed; and

    d.    *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building* or other structure.

2.    Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for **COVERAGE A – BUILDING PROPERTY**.

**COVERAGE B – PERSONAL PROPERTY**

1.    **B1 – Limited Replacement Cost Loss Settlement.**

    a.    *We* will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

        (1)    until repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged property;

        (2)    after repair or replacement is completed, *we* will pay the difference between the *actual cash value* and the cost *you* have actually and necessarily spent to repair or replace the property; and

        (3)    if property is not repaired or replaced within two years after the date of loss, *we* will pay only the *actual cash value*.

    b.    *We* will pay market value at the time of loss for:

        (1)    antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

        (2)    articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

        (3)    property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

        (1)    *our* cost to replace at the time of loss;

        (2)    the full cost of repair;

        (3)    any special limit of liability described in this policy; or

        (4)    any applicable Coverage B limit of liability.

2.    **B2 – Depreciated Loss Settlement.**

    a.    *We* will pay the *actual cash value* for property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below.

    b.    *We* will pay market value at the time of loss for:

        (1)    antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

        (2)    articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

(3)  property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1)  *our* cost to replace at the time of loss;

(2)  the full cost of repair;

(3)  any special limit of liability described in this policy; or

(4)  any applicable Coverage B limit of liability.

## SECTION I – CONDITIONS

1.  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, *we* will not be liable:

    a.  to the *insured* for an amount greater than the *insured's* interest; or

    b.  for more than the applicable limit of liability.

    **Fire Insurance: Total Loss Of Real Property.** A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This subsection does not apply to personal property.

2.  **Your Duties After Loss.** After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:

    a.  give prompt notice to *us* or *our* agent and also notify:

        (1)  the police if the loss is caused by theft, vandalism, or any other criminal act; and

        (2)  the credit card company or bank if the loss involves a credit card or bank fund transfer card;

    b.  protect the property from further damage or loss and also:

        (1)  make reasonable and necessary temporary repairs required to protect the property; and

        (2)  keep an accurate record of repair expenses;

    c.  prepare an inventory of damaged or stolen personal property:

        (1)  showing in detail the quantity, description, age, replacement cost, and amount of loss; and

        (2)  attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

    d.  as often as *we* reasonably require:

        (1)  exhibit the damaged property;

        (2)  provide *us* with any requested records and documents and allow *us* to make copies;

        (3)  while not in the presence of any other *insured*:

            (a)  give statements; and

            (b)  submit to examinations under oath. A parent or legal guardian may be present when the person being examined under oath is a minor; and

        (4)  produce employees, members of the *insured's* household, or others for examination under oath to the extent it is within the *insured's* power to do so;

    e.  submit to *us*, within 91 days after *our* request, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

        (1)  the time and cause of loss;

        (2)  interest of the *insured* and all others in the property involved and all encumbrances on the property;

        (3)  other insurance that may cover the loss;

        (4)  changes in title or occupancy of the property during the term of this policy;

        (5)  specifications of any damaged structure and detailed estimates for repair of the damage;

        (6)  an inventory of damaged or stolen personal property described in 2.c.;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

     (7)   receipts for additional living expenses incurred and records supporting the fair rental value loss; and

     (8)   evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES**, **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss; and

  f.   ***you*** must file a claim with ***us*** not later than one year after the date of the loss that is the subject of the claim unless ***you*** show good cause for not filing the claim within this time period, subject to the following conditions:

     (1)   for the purpose of this provision, good cause means: objective facts beyond ***your*** control that reasonably caused ***you*** to fail to file a claim under the policy within the one-year claim-filing deadline;

     (2)   if good cause is shown, ***we*** may extend the one-year claim-filing period. The extension is limited to the claim for which it is granted; and

     (3)   a request for an extension must:

        (a)   be submitted to ***us*** in writing;

        (b)   describe the good cause that caused ***you*** to miss the one-year claim-filing deadline; and

        (c)   be signed by ***you*** or ***your*** legal representative.

3.  **Loss to a Pair or Set.**  In case of loss to a pair or set, ***we*** may choose to:

  a.   repair or replace any part to restore the pair or set to its value before the loss; or

  b.   pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4.  **Appraisal.**  If ***you*** and ***we*** fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal.  Only ***you*** or ***we*** may demand appraisal.  A demand for appraisal must be in writing.  **You** must comply with **SECTION I – CONDITIONS**, **Your Duties After Loss** before making a demand for appraisal.  At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

  a.   Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

  b.   The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them.  In all instances the written report of agreement will be itemized and state separately the ***actual cash value***, replacement cost, and if applicable, the market value of each item in dispute.

    The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon ***you*** and ***us***.

  c.   If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire.  If the appraisers are unable to agree upon an umpire within 15 days:

     (1)   ***you*** or ***we*** may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the ***residence premises*** is located to select an umpire;

     (2)   the party requesting the selection described in item c.(1) must provide the other party:

        (a)   written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

        (b)   a copy of the written application; and

     (3)   a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute and will

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

be binding upon *you* and *us*.  In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

d.  To qualify as an appraiser or umpire for a loss to building property, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

(1)  an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

(2)  an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or

(3)  a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute.

e.  A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

(1)  has performed services for either party with respect to the claim at issue in the appraisal; or

(2)  has a financial interest in the outcome of the claim at issue in the appraisal.

f.  Each party will be responsible for the compensation of their selected appraiser.  Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by *you* and *us*.

g.  *You* and *we* do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h.  Appraisal is only available to determine the amount of the loss of each item in dispute.  The appraisers and the umpire have no authority to decide:

(1)  any other questions of fact;

(2)  questions of law;

(3)  questions of coverage;

(4)  other contractual issues; or

(5)  to conduct appraisal on a class-wide basis.

i.  Appraisal is a non-judicial proceeding and does not provide for or require arbitration.  Neither party will be awarded attorney fees.  The appraisal award may not be entered as a judgment in a court.

j.  A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5.  a.  **Other Insurance** (with respect to all coverages except **COVERAGE D – LOSS ASSESSMENT**).  If a loss covered by this policy is also covered by other insurance, except insurance in the name of the *condominium*, *we* will pay only *our* share of the loss.  *Our* share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

If, at the time of loss, there is other insurance in the name of the *condominium* covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance.

b.  **Other Insurance** (with respect to **COVERAGE D – LOSS ASSESSMENT**).  If a loss covered by this policy is also covered by other insurance, this insurance will be excess over other insurance in the name of the *condominium* covering the same property covered by this policy.

6.  **Suit Against Us.** No suit or action can be brought unless:

a.  there has been compliance with the policy provisions;

b.  except as provided in item c. below, suit or action brought against *us* is started within two years and one day after the cause of action accrues; and

c.  with respect to a loss caused by windstorm or hail in the catastrophe area as defined under Texas law, suit or action brought against *us* is started within the earlier of:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

(1) two years from the date **we** accept or reject the claim; or

(2) three years from the date of the loss that is the subject of the claim.

7. **Our Option.** **We** may repair or replace any part of the property damaged or stolen with similar property. Any property **we** pay for or replace becomes **our** property.

8. **Loss Payment. We** will adjust all losses with **you**. **We** will pay **you** unless some other person is named in the policy or is legally entitled to receive payment.

If **we** notify **you** that **we** will pay **your** claim, or part of **your** claim, **we** must pay within 5 **business days** after **we** notify **you**. If payment of **your** claim or part of **your** claim requires the performance of an act by **you**, **we** must pay within 5 **business days** after the date **you** perform the act.

9. **Abandonment of Property. We** need not accept any property abandoned by an ***insured***.

10. **Mortgage Clause** (without contribution).

a. The word "mortgagee" includes trustee.

b. **We** will pay for any covered loss of or damage to buildings or structures to the mortgagee shown in the ***Declarations*** as interests appear.

c. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

d. If **we** deny **your** claim because of **your** acts or because **you** have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

(1) at **our** request, pays any premiums due under this policy, if **you** have failed to do so;

(2) submits a signed, sworn statement of loss within 91 days after receiving notice from **us** of **your** failure to do so; and

(3) has notified **us** of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

All of the terms of this policy will then apply directly to the mortgagee.

Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

e. If **we** pay the mortgagee for any loss or damage and deny payment to **you** because of **your** acts or because **you** have failed to comply with the terms of this policy:

(1) the mortgagee's rights under the mortgage will be transferred to **us** to the extent of the amount **we** pay; and

(2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

At **our** option, **we** may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, **your** mortgage and note will be transferred to **us** and **you** will pay **your** remaining mortgage debt to **us**.

f. If this policy is cancelled, **we** will give the mortgagee specifically named in the ***Declarations*** written notice of cancellation.

If **we** cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to **you**.

If **you** cancel the policy, **we** will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date **we** mail the notice.

**We** will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

g. If the property described under Coverage A (Building Property) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

h.  If **we** elect not to renew this policy, the mortgagee specifically named in the **Declarations** will be given 30 days written notice of the nonrenewal.

11.  **No Benefit to Bailee.  We** will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12.  **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

13.  **Our Duties After Loss.**

a.  Within 15 days after **we** receive **your** written notice of claim, **we** must:

(1)  acknowledge receipt of the claim. If **our** acknowledgment of the claim is not in writing, **we** will keep a record of the date, method and content of **our** acknowledgment;

(2)  begin any investigation of the claim;

(3)  specify the information **you** must provide in accordance with "**Your Duties After Loss**" (item 2. above).

**We** may request more information, if during the investigation of the claim such additional information is necessary.

b.  After **we** receive the information **we** request, **we** must notify **you** in writing whether the claim will be paid or has been denied or whether more information is needed:

(1)  within 15 **business days**; or

(2)  within 30 days if **we** have reason to believe the loss resulted from arson.

c.  If **we** do not approve payment of **your** claim or require more time for processing **your** claim, **we** must:

(1)  give the reasons for denying **your** claim; or

(2)  give the reasons **we** require more time to process **your** claim. But, **we** must either approve or deny **your** claim within 45 days after requesting more time.

14.  **Catastrophe Claims.** If a claim results from a weather related catastrophe or major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

a.  is declared a disaster under the Texas Disaster Act of 1975; or

b.  is determined to be a catastrophe by the Texas Department of Insurance.

15.  **Recovered Property.** If either **you** or **we** recover any property after loss settlement, that party must give the other prompt notice. At **your** option, **you** may keep the property or **we** will return it to **you**. Otherwise, it will become **our** property. If **you** choose to keep the property, the loss payment will be adjusted based on the amount **you** received for the recovered property.

16.  **Assignment of Claim.** Assignment to another party of any of **your** rights or duties under this policy regarding any claim, or any part of any claim, will be void and **we** will not recognize any such assignment, unless **we** give **our** written consent. However, once **you** have complied with all policy provisions, **you** may assign to another party, in writing, payment of claim proceeds otherwise payable to **you**.

17.  **Glass Replacement.** Loss for damage to glass caused by a **loss insured** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

## SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:

1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable; and

2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

### COVERAGE M – MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

    a. arises out of a condition on the *insured location* or the ways immediately adjoining;

    b. is caused by the activities of an *insured*;

    c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

    d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

### SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses. *We*** will pay:

    a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend.

    b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

    c. reasonable expenses an *insured* incurs at *our* request. This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding *us* in the investigation or defense of claims or suits;

    d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

        (1) that part of the damages *we* pay; or

        (2) the Coverage L limit; and

    e. interest on the entire judgment that accrues after entry of the judgment and before *we* pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses. *We*** will pay expenses for first aid to others incurred by an *insured* for *bodily injury* covered under this policy. *We* will not pay for first aid to *you* or any other *insured*.

3. **Damage to Property of Others.**

    a. *We* will pay for *property damage* to property of others caused by the activities of an *insured*.

    b. *We* will not pay more than the smallest of the following amounts:

        (1) replacement cost at the time of loss;

        (2) full cost of repair; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

(3) the limit of liability shown in the **Declarations** for **Damage to Property of Others** for any one **occurrence**.

c.  **We** will not pay for **property damage**:

(1) for a loss that is recoverable under Section I of this policy. **We** also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

(2) caused intentionally by an **insured** 13 years of age or older;

(3) to property, other than a rented golf cart, owned by, or rented to an **insured**, a tenant of an **insured**, or a resident in **your** household;

(4) arising out of:

# SECTION II – EXCLUSIONS

1.  Coverage L and Coverage M do not apply to:

a.  **bodily injury** or **property damage** that:

(1) was a result of a willful and malicious act or omission of the **insured**;

(2) was intended by the **insured**; or

(3) was expected by the **insured**.

However, exclusions a.(2) and a.(3) above do not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

Exclusions a.(1), a.(2), and a.(3) above apply to all **bodily injury** or **property damage** even if the:

(1) **bodily injury** or **property damage** was sustained by a different person, entity, or property than was expected or intended;

(2) **bodily injury** or **property damage** was of a different kind, quality, or degree than was expected or intended;

(3) **insured** was not charged with or convicted of a criminal act or omission; or

(4) **insured** was impaired by drugs or alcohol;

(a) **business** pursuits;

(b) any act or omission in connection with a premises an **insured** owns, rents, or controls, other than the **insured location**;

(c) a condition on the **insured location** or the ways immediately adjoining; or

(d) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

(5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same **property damage**.

b.  **bodily injury** or **property damage** arising out of **business** pursuits of any **insured**, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-**business** pursuits;

c.  **bodily injury** or **property damage** arising out of the rental of any part of any premises by any **insured**. This exclusion does not apply:

(1) to the rental of the **residence premises**:

(a) either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

(b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

(c) in part, as an office, school, studio, or private garage;

(2) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations;

(3) with respect to loss under Coverage D; or

(4) to activities that are ordinarily incident to non-**business** pursuits;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

d. ***bodily injury*** or ***property damage*** arising out of the rendering or failing to render professional services. This exclusion does not apply to Coverage D;

e. ***bodily injury*** or ***property damage*** arising out of any premises currently owned or rented to any ***insured*** which is not an ***insured location***. This exclusion does not apply to ***bodily injury*** to a ***residence employee*** arising out of and in the course of the ***residence employee's*** employment by an ***insured***;

f. ***bodily injury*** or ***property damage*** arising out of the ownership, maintenance, use, loading, or unloading of:

(1) an aircraft. This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

(a) solely for recreational or hobby purposes;

(b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

(c) weighing not more than 55 pounds at the time of operation;

unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

(a) ***property damage*** to any aircraft; or

(b) ***bodily injury*** or ***property damage*** resulting from interference with an aircraft carrying people regardless of whether the ***bodily injury*** or ***property damage*** is sustained by people or property on the aircraft or not;

(2) a ***motor vehicle*** owned or operated by or rented or loaned to any ***insured***; or

(3) a watercraft:

(a) owned by or rented to any ***insured*** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any ***insured*** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any ***insured***;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any ***insured*** if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to ***bodily injury*** to a ***residence employee*** arising out of and in the course of the ***residence employee's*** employment by an ***insured***. Exclusion f.(3) does not apply while the watercraft is on the ***residence premises***;

g. ***bodily injury*** or ***property damage*** arising out of:

(1) the entrustment by any ***insured*** to any person;

(2) the supervision by any ***insured*** of any person;

(3) any liability statutorily imposed on any ***insured***; or

(4) any liability assumed through an unwritten or written agreement by any ***insured***;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or ***motor vehicle*** not covered under Section II of this policy;

h. ***bodily injury*** or ***property damage*** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. ***bodily injury*** to any ***insured*** within the meaning of part 13.a., 13.b., or 13.c. of the definition of ***insured***.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

This exclusion also applies to any claim made or suit brought against any *insured* within the meaning of part 13.a., 13.b., or 13.c. of the definition of *insured* to share damages with or repay someone else who may be obligated to pay damages because of the *bodily injury* sustained by any *insured* within the meaning of part 13.a., 13.b., or 13.c. of the definition of *insured*;

j.  any claim made or suit brought against any *insured* by:

(1)  any person in the care of any *insured* because of child care services provided by or at the direction of:

(a)  any *insured*;

(b)  any employee of any *insured*; or

(c)  any other person actually or apparently acting on behalf of any *insured*; or

(2)  any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

(a)  any *insured*;

(b)  any employee of any *insured*; or

(c)  any other person actually or apparently acting on behalf of any *insured*.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age;

k.  *bodily injury* or *property damage* arising out of an *insured's* participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l.  *bodily injury* or *property damage* arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any *insured*, of any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional;

m.  *bodily injury* or *property damage* arising out of the actual, alleged, or threatened presence, discharge, dispersal, seepage, migration, release, escape of, or exposure to contaminants or pollutants at or from any source or location.

Contaminants and pollutants include but are not limited to any solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, fuel oil, asbestos, or lead.

This exclusion does not apply to *bodily injury* or *property damage*:

(1)  caused by contaminants or pollutants from a hostile fire.  A hostile fire is one that cannot be controlled, escapes from where it was initially set and confined, or was not intended to exist;

(2)  caused by contaminants or pollutants that escape from heating and air conditioning systems and appliances; or

(3)  caused by common household chemicals used to maintain the *residence premises*.

*We* also do not cover:

(1)  any loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of contaminants or pollutants;

(2)  any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or

28

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

in any way responding to or assessing the effects of contaminants or pollutants; or

(3) contamination or pollution arising out of actually or allegedly defective building materials, nuclear substances, or waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

n. **bodily injury** or **property damage** arising out of any actual, alleged, or threatened:

(1) sexual harassment, sexual molestation, or sexual misconduct;

(2) physical or mental abuse; or

(3) corporal punishment;

by the **insured**.

For the purpose of this exclusion, abuse means an act that is committed with the intent to cause harm; or

o. **bodily injury** or **property damage** arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungus** at or from any source or location.

**We** also do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of **fungus**; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, remediating, re-mediating, disposing of, or in any way responding to or assessing the effects of **fungus**;

p. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the **residence premises** in the 12-month period prior to the date of the loss; or

q. liability assumed by any **insured** under any contract or agreement to pay special assessments levied against the **condominium** owners by the **association** in accordance with the governing rules of the **condominium**. This exclusion does not apply with respect to loss under Coverage D.

2. Coverage L does not apply to:

a. liability:

(1) for **your** share of any loss assessment charged against all members of any type of association of property owners; or

(2) imposed on or assumed by any **insured** through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the **insured** would have in absence of the contract or agreement;

b. **property damage** to property owned by any **insured** at the time of the **occurrence**;

c. **property damage** to property rented to, used or occupied by, or in the care, custody, or control of any **insured** at the time of the **occurrence**. This exclusion does not apply to **property damage** caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** or the **condominium** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f. **bodily injury** or **property damage** arising out of any real property any **insured** has sold or transferred. This includes but is not limited to **bodily injury** or **property damage** arising out

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any *property damage* to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1) *bodily injury* arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2) *property damage* arising out of fire, smoke, or explosion; or

g. any order of restitution issued by a court in a criminal proceeding or equitable action. This exclusion does not apply to the extent liability coverage would apply in the absence of the order of restitution.

3. Coverage M does not apply to *bodily injury*:

a. to a *residence employee* if it occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured*. This exclusion does not apply with respect to loss under Coverage D;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

c. to a person other than a *residence employee* of an *insured*, regularly residing on any part of the *insured location*; or

d. from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the *Declarations*. This is the limit for all damages from each *occurrence* for the policy period in which the *bodily injury* or *property damage* first occurs, regardless of the number of *insureds*, claims made, or persons injured. No additional limits or coverage will be available for the *occurrence* under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the *Declarations*. This is *our* limit for all medical expenses for *bodily injury* to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each *insured*. This condition does not increase *our* limit of liability for any one *occurrence*.

3. **Duties After Loss.** In case of an accident or *occurrence*, the *insured* must cooperate with *us* in the investigation, settlement, or defense of any claim or suit and also perform the following duties that apply. *You* must cooperate with *us* in seeing that these duties are performed:

a. give written notice to *us* or *our* agent as soon as possible, which sets forth:

(1) the identity of this policy and the *insured*;

(2) reasonably available information on the time, place, and circumstances of the accident or *occurrence*; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to *us* every notice, demand, summons, or other process relating to the accident or *occurrence*;

c. at *our* request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an *insured*;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under **SECTION II – ADDITIONAL COVERAGES**, **Damage to Property of Others**, exhibit the damaged property if within the *insured's* control; and

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

e.  the *insured* must not, except at the *insured's* own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the *bodily injury*.

4. **Coverage M Requirements.** *We* may require the following in regard to any Coverage M claim:

a.  written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

b.  the injured person's submission to physical examinations by a physician selected by *us* when and as often as *we* reasonably require; and

c.  any authorizations from the injured person as *we* may require.

5. **Payment of Claim – Coverage M or Damage to Property of Others.** Payment under either of these is not an admission of liability by an *insured* or *us*.

6. **Suit Against Us.** No action will be brought against *us* unless there has been compliance with the policy provisions.

No one will have the right to join *us* as a party to an action against an *insured*. Further, no action with respect to Coverage L will be brought against *us* until

the obligation of the *insured* has been determined by final judgment on the merits, after an actual trial or by an agreement signed by *us*; but *we* will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an *insured* will not relieve *us* of *our* obligation under this policy.

8. **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Notice of Settlement of Liability Claim.**

a.  *We* will notify the *insured* in writing of any initial offer to compromise or settle a claim against the *insured*. *We* will give the *insured* notice within 10 days after the date the offer is made.

b.  *We* will notify the *insured* in writing of any settlement of a claim against the *insured*. *We* will give the *insured* notice within 30 days after the date of the settlement.

## SECTION I AND SECTION II – CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or *bodily injury* or *property damage* under Section II that occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to *you* and any other *insured*, if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

a.  If the misrepresentation was made in the application for the policy, the policy is void if it is shown at trial that the matter misrepresented:

(1)  was material to the risk; or

(2)  contributed to the contingency or event on which the policy became due and payable.

b.  If the misrepresentation was made in a proof of loss, the policy is void if it is shown at trial that the misrepresentation:

(1)  was fraudulently made;

(2)  misrepresented a fact material to the question of *our* liability under the policy; and

(3)  misled *us* and caused *us* to waive or lose a valid defense to the policy.

3. **Liberalization Clause.** If *we* adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.**  A waiver or change of any provision of this policy must be in writing by *us* to be valid.  *Our* request for an appraisal or examination does not waive any of *our* rights.

5. **Cancellation.**

   a.   *You* may cancel this policy at any time by giving *us* advance written notice of the date cancellation is to take effect. *We* will send *you* any refund due no later than 15 *business days* after the effective date of cancellation.

   b.   *We* may cancel this policy for the reasons stated in this condition by mailing *you* notice in writing of the date cancellation takes effect.

      (1)   If this policy has been in effect for less than 60 days and is not a renewal policy, *we* may cancel this policy if:

         (a)   *we* identify a condition that:

            i.    creates an increased risk of hazard;

            ii.   was not disclosed in the application for insurance coverage; and

            iii.  is not the subject of a prior claim; or

         (b)   before the effective date of the policy, *we* have not accepted a copy of a required inspection report that:

            i.    was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and

            ii.   is dated not earlier than the 90th day before the effective date of the policy.

      (2)   If this policy has been in effect for 60 days or more, *we* may not cancel this policy unless:

         (a)   *you* do not pay the premium or any portion of the premium when due;

         (b)   the Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state;

         (c)   *you* submit a fraudulent claim; or

         (d)   there is an increase in the hazard covered by this policy that is within *your* control and that would produce an increase in the premium rate of this policy.

   c.   The effective date of cancellation cannot be before the 10th day after *we* mail the notice if *we* cancel for any of the reasons in paragraph (2), or the 30th day after *we* mail notice if *we* cancel for any other reason. *Our* notice of cancellation must state the reason for cancellation.

   d.   If *we* cancel, *our* notice to *you* will state that if the refund is not included with the notice, it will be returned no later than 15 *business days* after the effective date of cancellation.

   e.   *We* may not cancel this policy solely because *you* are an elected official.

6. **Nonrenewal.**

   a.   *We* may not refuse to renew this policy solely because *you* are an elected official.

   b.   *We* may refuse to renew this policy if *you* have filed three or more claims under the policy in any three year period provided that *we* have given *you* notice in compliance with Texas law.  Such notice will list two prior claims *you* have made under the policy and will provide, in part, that the filing by *you* of another claim could cause *us* to refuse to renew *your* policy.

      A claim under this subsection of this policy does not include a claim that is filed but is not paid or payable under the policy, a claim resulting from a loss caused by natural causes or an appliance-related claim that *we* are prohibited from using under Texas law.

      Consistent with Texas law, an appliance-related claim is a request for indemnification for a loss

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

arising from the discharge or leakage of water or steam from an appliance that is the direct result of the failure of the appliance. An appliance means a household device operated by gas or electric current, including hoses directly attached to the device. The term includes air conditioning units, heating units, refrigerators, dishwashers, icemakers, clothes washers, water heaters and disposals.

c. If *we* refuse to renew this policy, *we* must deliver to *you*, or mail to *you* at *your* last mailing address known to *us* and any mortgagee named in the *Declarations*, written notice of *our* refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If *we* fail to give *you* proper notice of *our* decision not to renew, *you* may require *us* to renew the policy.

7. **Assignment of Policy.** Assignment of this policy will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.

8. **Subrogation and Reimbursement.**

   a. **Subrogation.**

      (1) Applicable to SECTION I:

         If any *insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them. However before a loss, an *insured* may waive in writing all rights of recovery against any person.

      (2) Applicable to SECTION II:

         If any *insured* has rights to recover all or part of any payment *we* have made under this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others**.

   b. **Reimbursement.**

      If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or organization, then the *insured* to or for whom *we* make payment must:

      (1) hold in trust for *us* the proceeds of any recovery; and

      (2) reimburse *us* to the extent of *our* payment.

9. **Death.** If *you* die:

   a. *we* insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

   b. *insured* includes:

      (1) any member of *your* household who is an *insured* at the time of *your* death, but only while a resident of the *residence premises*; and

      (2) with respect to *your* property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

11. **Premium.**

    a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued *Declarations*.

    b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

other elements that affect the premium applicable at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the *State Farm Companies*;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

d. *Your* purchase of this policy may allow:

(1) *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

(2) the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

12. **Right to Inspect.**

a. *We* have the right but are not obligated to perform the following:

(1) make inspections and surveys of the *insured location* at any time;

(2) provide *you* with reports on conditions *we* find; or

(3) recommend changes.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

b. *We* do not:

(1) make safety inspections;

(2) undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

(3) warrant that conditions are safe or healthful; or

(4) warrant that conditions comply with laws, regulations, codes, or standards.

This inspection applies to *us* and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on *our* behalf.

13. **Change of Policy Address.** *We* may change the Named Insured's policy address as shown in the *Declarations* and in *our* records to the most recent address provided to *us* by:

a. *you*; or

b. the United States Postal Service.

14. **Electronic Delivery.** With *your* consent, *we* may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

15. **Duties Regarding Claim Information.** An *insured* or a legal representative acting on an *insured's* behalf must provide *us* with any requested authorizations related to the claim. *Our* rights will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the *Declarations* and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of *insured* is extended to include the person or organization shown in the *Declarations* as an Additional Insured or whose name is on file with *us*. Coverage is with respect to:

1. **SECTION I – Coverage A**, **Coverage B**, or **Coverage C**; or

2. **SECTION II – Coverage L** and **Coverage M** but only with respect to the *residence premises*. This coverage does not apply to *bodily injury* to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the *Declarations*.

**Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability**, item b., for property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the *Declarations* for this option.

**Option BU – Business Pursuits. SECTION II – EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the *business* pursuits of an *insured* who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for *bodily injury* or *property damage* arising out of a *business* owned or financially controlled by the *insured* or by a partnership of which the *insured* is a partner or member;

b. for *bodily injury* or *property damage* arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

   (1) computer programming, architectural, engineering, or industrial design services;

   (2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

   (3) beauty or barber services or treatment;

c. for *bodily injury* to a fellow employee of the *insured* injured in the course of employment; or

d. when the *insured* is a member of the faculty or teaching staff of a school or college:

   (1) for *bodily injury* or *property damage* arising out of the maintenance, use, loading, or unloading of:

      (a) draft or saddle animals, including vehicles for use with them; or

      (b) aircraft, *motor vehicles*, recreational *motor vehicles* or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

      owned, operated, or hired by or for the *insured* or employer of the *insured* or used by the *insured* for the purpose of instruction in the use thereof; or

   (2) under **Coverage M** for *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

The following additional provisions apply:

1. **We** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, **we** will pay for losses caused by wild bears or deer;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling, or explosion of firearms;

   g. breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, fire, or accidents to conveyances; or

   h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. **Our** limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. **Our** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the **Declarations** for this option.

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with **us**.

1. **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that

equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability** on property used or intended for use in a **business**.

2. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

3. **SECTION II – EXCLUSIONS**, item 1.b. is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured**, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** that are necessary or incidental to the use of the **residence premises** as an incidental **business**;

4. This insurance does not apply to:

   a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

   b. **bodily injury** to a student arising out of corporal punishment administered by or at the direction of the **insured**;

   c. liability arising out of any acts, errors, or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting, or computer programming; or

   d. any claim made or suit brought against any **insured** by:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

(1) any person in the care of any *insured* because of child care services provided by or at the direction of:

   (a) any *insured*;

   (b) any employee of any *insured*; or

   (c) any other person actually or apparently acting on behalf of any *insured*; or

(2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

   (a) any *insured*;

   (b) any employee of any *insured*; or

   (c) any other person actually or apparently acting on behalf of any *insured*.

Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**, **Theft** apply to Option JF.

The following additional provisions apply:

1. *We* will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, *we* will pay for losses caused by wild bears or deer;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

2. *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3. *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4. *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the *Declarations* for this option.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Joanna Walls on behalf of Patrick Pijls
Bar No. 24118501
jwalls@mckoolsmith.com
Envelope ID: 58452636
Status as of 10/25/2021 10:47 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joanna Walls | | jwalls@mckoolsmith.com | 10/22/2021 12:24:28 PM | SENT |
| Patrick Pijls | | ppijls@mckoolsmith.com | 10/22/2021 12:24:28 PM | SENT |

# Exhibit 2

FILED
12/28/2021 6:30 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Margaret Thomas DEPUTY

## CAUSE NO. DC-21-15606

| | | |
|---|---|---|
| **DORIS L. MORRISON,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **DALLAS COUNTY, TEXAS** |
| **STATE FARM LLOYDS,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | **162nd JUDICIAL DISTRICT** |

## <u>PLAINTIFF DORIS L. MORRISON'S FIRST AMENDED PETITION</u>

To the Honorable Court:

Plaintiff Doris L. Morrison, complaining of Defendant State Farm Lloyds, respectfully shows the following:

## I.  DISCOVERY LEVEL

1.  Morrison intends to conduct discovery under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

## II.  NATURE OF THE ACTION

2.  Morrison seeks monetary and declaratory relief, costs, and attorneys' fees for common-law breach of contract (homeowner's insurance policy) under the laws of the State of Texas.

## III.  JURISDICTION AND VENUE

3.  This Court has original subject-matter jurisdiction over this action because the amount in controversy exceeds $500, exclusive of interest.

4.  This Court has personal jurisdiction over State Farm Lloyds because it contracted to insure property located in the State of Texas.

5.  This venue is proper because, at the time of loss, the insured property was located in Dallas County, Texas.

## IV.  PARTIES

6.  Doris L. Morrison is a natural person and citizen of the State of Texas. The last three numbers of her driver's license number are 223. The last three numbers of her social-security number are 846.

7.  State Farm Lloyds ("SFL") is a domestic insurer of, as relevant here, real and personal property. SFL may be served with process by serving Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## V.    FACTUAL BACKGROUND

8.    On October 20, 2019, a tornado sustaining speeds of up to 140 miles per hour struck and destroyed Morrison's condominium-home and personal property in Dallas, Texas. SFL insured Morrison's building and personal property. Yet when Morrison submitted a claim to SFL for losses arising out of the tornado, SFL refused to pay all of the coverage due and owing under the policy. Morrison's life has been upended by the tornado, and SFL cannot undo all the harm she has suffered. SFL can, however, uphold its contractual commitment to help Morrison move on with her life. Having purchased her homeowner's policy for moments like this one, Morrison brings this action to be made whole under her policy.

### A.    A Tornado Strikes Morrison's Building and Personal Property and Gives Rise to Insured Losses.

9.    On or around October 20, 2019, 10 tornados touched down in the Dallas-Fort Worth Metroplex.

10.    At its peak, the worst of the tornados, at issue here, stretched three-quarters of a mile wide and sustained winds of up to 140 miles per hour. On the Enhanced Fujita Scale (the "EF Scale"), a measure of tornado strength, the tornado was classified as EF-3, the first such tornado to strike Dallas since 1976. The tornado tore from Dallas to Richardson, resulting in about $2 billion worth of insured property damage, the costliest tornado outbreak in Texas history. Morrison's former condominium-home, along with 30 additional homes, were located at the center of the tornado's path. The home's address was 11224 Park Central Place, Apartment A, Dallas, Texas 75230-3303.

11.    Morrison's home was the lower unit of a two-unit stacked structure. The tornado undermined the structure's physical integrity. And the direct force of wind blew open at least

2

Morrison's window, blew open at least the upper unit's walls and roof, and fell at least Morrison's bedroom and hallway ceilings.

12.    By opening  the walls, windows, and roof of the structure, the tornado allowed rain, sand, or dust to immediately enter the home. For example, rain entered the walls, windows, or roof of at least the upper unit and soaked through the flooring to Morrison's unit thus destroying all personal property susceptible to water damage, including by warping furniture. No one could have taken any reasonable efforts to prevent loss of any personal property.

13.    Though the association covered some of the complex's structures with tarps, for example, the structural integrity of Morrison's two-unit stacked structure was too compromised to access and lay a tarp. For the same reason, no one could safely enter the home to remove any personal property. The entire complex, moreover, was a debris field. The poor structural integrity and debris field aside, the home contained asbestos, which the tornado had dislodged and blown into Morrison's home. Indeed, Morrison informed a SFL claims adjuster of the presence of asbestos, and fearing for her own safety, the adjuster refused to visit the home and to adjust the property.[1]

14.    Owing to the tornado, the entire condominium complex, including Morrison's home, was demolished on or around June 18, 2020 and has not yet been rebuilt. Since the tornado destroyed her building and personal property, Morrison has also suffered losses relating to loss assessment.

---

[1] Morrison knows the adjuster only by the name "Sharonda."

**B.      The Policy Provides Coverage.**

15.      Having paid a substantial premium, Morrison is the "named insured"[2] under SFL policy number 53-NJ-9952-4,[3] which was in effect from March 23, 2019 to March 23, 2020 (the "Policy"),[4] and Morrison's former condominium-home was the "residence premises."[5]

16.      The Policy provides coverage for "Personal Property," coverage that the Policy labels as "Coverage B,"[6] up to a limit of liability of $37,500.[7]

17.      Under Coverage B, the Policy covers "personal property owned or used by an insured while it is anywhere in the world."[8]

18.      SFL covenants to pay for "accidental direct physical loss to the property described in Coverage B," so long as that loss is caused by an insured loss.[9]

19.      The Policy also provides coverage for "jewelry,"[10] coverage that the Policy labels as "Option JF,"[11] up to a limit of liability of $1,500 per article or $2,500 in the aggregate for each loss.[12]

---

[2] Ex. A, Policy, at HO-2000 at 2 (cleaned up). The numbers of the policy forms can be found on the lower-left or -right corners of the forms.

[3] HO-2000 at 1.

[4] HO-2000 at 1.

[5] HO-2000 at 1 (cleaned up).

[6] H6-2143 at 5-7.

[7] HO-2000 at 2.

[8] H6-2143 at 5 (cleaned up).

[9] H6-2143 at 12.

[10] HO-2000 at 3 (cleaned up).

[11] H6-2143 at 37.

[12] HO-2000 at 3; HG6-2143 at 37.

20.     SFL covenants to pay for "accidental direct physical loss or damage" to "jewelry,"[13] so long as that loss is caused by an insured loss.

21.     The Policy also provides coverage for "Building Property," coverage that the Policy labels as "Coverage A,"[14] up to a limit of liability of $82,400.[15] And the Policy provides coverage for "Loss Assessment," coverage that the Policy labels as "Coverage D,"[16] up to a limit of liability of $1,000.[17]

22.     The limits of liability are increased to account for inflation.[18]

**C.     Morrison Files a Claim.**

23.     On or around October 21, 2019, Morrison promptly submitted a claim to SFL, claiming under the Policy coverage for losses arising out of the tornado. SFL assigned her claim number 53-02W4-82K.

24.     On or around November 15, 2019, Morrison received from SFL $15,000, which Morrison understands was intended to serve as a partial payment for her loss of personal property.

25.     Later, Morrison completed and submitted to SFL, what SFL calls, a "Personal Property Customer Worksheet." In the excel spreadsheet, she claimed loss of nearly 141 items of personal property. For each item, she indicated when relevant the (1) room in which the property was located, (2) brand or manufacturer, (3) model number, (4) item description, (5) quantity, (6) age, (7) condition, and (8) pre-tax replacement cost. Using those inputs, a formula devised by SFL

---

[13] H6-2143 at 37 (cleaned up).

[14] H6-2143 at 5.

[15] HO-2000 at 2.

[16] H6-2143 at 8-9.

[17] HO-2000 at 2.

[18] H6-2143 at 12.

in the spreadsheet generates a cost of each item and a total estimated replacement cost. Based on Morrison's inputs, SFL estimated a total replacement cost of $67,175.

      **D.**    **SFL Wrongfully Denies Coverage.**

26.    Under the Policy, Morrison's losses relating to building property, personal property, jewelry, and loss assessment are entitled to coverage, and the tornado is an insured loss. No policy exclusion applies.

27.    In December 2020, Morrison spoke with Nelson White, who she understands to be a SFL claims adjustor. White told Morrison that SFL would not pay more than $15,000 for Morrison's loss of personal property and jewelry.

28.    SFL has to date paid only $15,000 for loss of personal property and jewelry, leaving amounts up to the limits of liability due and owing under the Policy. SFL has paid nothing for losses relating to building property and loss assessment, leaving amounts up to the limits of liability due and owing under the Policy.

**VI.**    **CAUSES OF ACTION**

**COUNT I**
**(Common-Law Breach of Contract)**

29.    Morrison repeats and realleges the allegations set forth in the foregoing paragraphs of this Petition as if fully set forth herein.

30.    The Policy constitutes a valid and enforceable contract between Morrison, as the "Named Insured," and SFL, as the "Company."

31.    As described above, Morrison has sustained losses covered under the Policy and during the Policy period.

6

32.    Morrison provided prompt notice of her losses; performed all obligations required of her under the Policy; or was ready, willing, and able to perform her obligations under the Policy at the time SFL denied coverage in or around December 2020.

33.    Under the terms of the Policy, SFL must pay up to the limits of liability for any loss covered under the Policy, subject only to the deductible and any sub-limits for specific coverages.

34.    As to losses of personal property and jewelry, the representation from White to Morrison was a clear expression that SFL will not perform its obligation to provide full coverage to Morrison under the Policy and in breach of the Policy.

35.    SFL has paid only $15,000 in connection with Morrison's loss of personal property and jewelry.

36.    As a direct and proximate result of SFL's breach of contract, Morrison has suffered and will continue to suffer damages in an amount to be determined at trial, plus attorneys' fees and pre- and post-judgment interest to the extent permitted by law.

## COUNT II
### (Declaratory Judgment)

37.    Morrison repeats and realleges the allegations set forth in the foregoing paragraphs of this Petition as if fully set forth herein.

38.    SFL disputes, or Morrison reasonably believes SFL will dispute, SFL's legal obligation to pay Morrison's claim. As to personal property and jewelry, SFL has affirmatively declined to cover all losses up to the limits of liability. As to losses relating to building property and loss assessment, SFL's failure to pay any amounts in the roughly two years since the tornado's impact indicates that SFL will never pay for any such losses.

39.    Morrison seeks a declaration by this Court of SFL's obligations under its Policy, including the fact of coverage, the amount of coverage, and the inapplicability of any exclusion.

40.     An actionable and justiciable controversy exists or will exist between Morrison and SFL concerning the proper construction of the Policy, and the rights and obligations of the parties thereto, with respect to Morrison's claim for losses arising out of the tornado.

41.     A declaratory judgment will be useful in resolving this case or controversy. By clarifying the parties' rights and duties under the Policy, a declaratory judgment will guide SFL's treatment of Morrison's claim, especially if SFL has not yet affirmatively denied coverage for certain losses.

## VII.     JURY DEMAND

42.     Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## VIII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that Defendant be cited to appear and answer and that on final trial of this matter, the Court enter judgment, awarding Plaintiff:

(1)     Declaratory relief against Defendant on the causes of action alleged herein;

(2)     Monetary relief;

(3)     Prejudgment interest at the legal rate on all liquidated damages and postjudgment interest at the legal rate after entry of judgment;

(4)     Costs of suit;

(5)     Attorneys' fees; and

(6)     Any other relief at law or equity to which Plaintiff is entitled.

Dated: December 28, 2021                    By:    /s/ Patrick Pijls

Patrick Pijls
Texas Bar No. 24118501
ppijls@mckoolsmith.com
**McKool Smith PC**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEY   FOR   PLAINTIFF
DORIS L. MORRISON**

# EXHIBIT A

# HO-2000

**State Farm Lloyds**
*A Stock Company With Home Offices in Bloomington, Illinois*

*8900 Amberglen Boulevard*
*Austin, TX 78729-1110*



AT2            H-25-2030-FB31  F H 6
     000996 3200
MORRISON, DORIS L
11224 PARK CENTRAL PL APT A
DALLAS TX  75230-3303



ST-
0106-0000

# RENEWAL DECLARATIONS

| | |
|---|---|
| **AMOUNT DUE:** | **None** |
| Payment is due by  BILLED THROUGH SFPP | |

**Policy Number:**    53-NJ-9952-4

**Policy Period:**   12 Months
**Effective Dates:** MAR 23 2019 to MAR 23 2020
The policy period begins and ends at 12:01 am standard time at the residence premises.

## Condominium Unitowners Policy

**Location of Residence Premises**
11224 PARK CENTRAL PL APT A
DALLAS TX  75230-3303

**Your State Farm Agent**
MIKE MILLER-JR
1550 W BAY AREA BLVD STE 100
FRIENDSWOOD TX    77546-2666

**Phone:** (281) 486-8950  or  (281) 486-0012

| | |
|---|---|
| **Construction:** | Masonry Veneer |
| **Year Built:** | 1967 |

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lien-holder written notice in compliance with the policy provisions or as required by law.

## IMPORTANT MESSAGES

NOTICE: You will be receiving a second envelope that will contain your new Policy Booklet and Important Notice Regarding your New Policy.  Please call your agent if you have any questions.
NOTICE: Information concerning changes in your coverage is included. Please call your agent if you have any questions.
THIS POLICY CONTAINS A POLLUTION EXCLUSION (INCLUDING BUT NOT LIMITED TO ASBESTOS AND LEAD) LOCATED UNDER SECTION II - EXCLUSIONS.
The Inflation Coverage provision may change your deductible. Refer to page 12 of your policy.

## PREMIUM

| | |
|---|---|
| Annual Premium | $718.00 |
| Water Damage | 20.00 |
| FAIR Plan Assmt | 1.41 |
| *Your premium has already been adjusted by the following:* | |
| Home Alert Discount                            Renewal Discount | |
| Home/Auto Discount | |

| | |
|---|---|
| **Total Premium** | **$738.00** |

Prepared   FEB 04 2019
HO-2000
007396  420
N        C,BX,GB,H5

*Thanks for letting us serve you.  We appreciate our long term customers.*

(o1F1080B)  04-04-2016



| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS | |
|---|---|---|
| MORRISON, DORIS L | **Mortgagee**<br>PNC BANK NATIONAL ASSOCIATION<br>ISAOA<br>PO BOX 7433<br>SPRINGFIELD OH  45501-7433 | Loan Number :<br>0006283959 |
| | PARK CENTRAL CONDOMINIUM<br>ASSOCIATION<br>CLASSIC PROPERTY MGMT<br>PO BOX 201502<br>ARLINGTON TX  76006-1502 | Loan Number :<br>N/A |

## SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Building Property | $ 82,400 |
| B Personal Property | $ 37,500 |
| C Loss of Use | $ 15,000 |
| D Loss Assessment | $ 1,000 |

**Additional Coverages**

| | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage B amount/$750 per item |

## SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $ 100,000 |
| Damage to the Property of Others | $ 1,000 |
| M Medical Payments to Others (Each Person) | $ 1,000 |

## INFLATION

Inflation Coverage Index: 252.9

## DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| All Losses | $ 1,000 |

## LOSS SETTLEMENT PROVISIONS

Replacement Cost - Similar Construction - Coverage A
B1 Limited Replacement Cost - Coverage B

FEB 04 2019

o1f1080A

53-NJ-9952-4                                                                

## FORMS, OPTIONS, AND ENDORSEMENTS

| | |
|---|---|
| H6-2143 | Condominium Unitowners Policy |
| Option JF | *Jewelry and Furs $1,500 Each<br>Article/$2,500 Aggregate |
| HO-2597 | *Water Damage Endorsement |
| | *New Form Attached |

## ADDITIONAL MESSAGES

State Farm® works hard to offer you the best combination of price, service, and protection. The amount you pay for homeowners insurance is determined by many factors such as the coverages you have, the type of construction, the likelihood of future claims, and information from consumers reports.

**Other limits and exclusions may apply - refer to your policy**

Your policy consists of these Declarations, the Condominium Unitowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by State Farm Lloyds, Inc.

SERVICE OF PROCESS - Service of Process may be had upon the State Official duly designated for such purpose in the state in which the property insured hereunder is located if State Farm Lloyds is licensed in such state; or upon the Commissioner of Insurance of the State of Texas; or upon the duly appointed Attorney-in-Fact for State Farm Lloyds at Dallas, Texas. Underwriters at State Farm Lloyds have complied with the laws of the State of Texas regulating Lloyds plan insurance and said statutes are hereby made a part of the policy. The entire assets of State Farm Lloyds supports its policies, but each individual underwriter's liability is several and not joint and is limited by law to the amount fixed by his/her underwriter's contract and subscription and no underwriter is liable as a partner. This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no agent or other representative of State Farm Lloyds shall have the power to waive any provision or condition of this policy. This policy is non-assessable and no contingent liability of any kind and character attaches to the insured named herein.

In Witness Whereof, State Farm Lloyds has caused this policy to be signed by its President and Secretary.

State Farm Lloyds

By:

Secretary
State Farm Lloyds, Inc.
Attorney-in-Fact

President
State Farm Lloyds, Inc.
Attorney-In-Fact

**StateFarm**

**Your coverage amount....**
It is up to you to choose the coverage and limits that meet your needs. We encourage you to periodically review your coverages and limits with your agent.

EB 04 2019

o1f1808A

HO-2000

3-NJ-9952-4      398

HO-2597C
Page 1 of 3

# IMPORTANT NOTICE



Effective with this policy term, **HO-2597 WATER DAMAGE ENDORSEMENT** replaces **FE-5369.2 WATER DAMAGE ENDORSEMENT**.

This notice summarizes the changes being made to your policy.  Please read the new endorsement carefully and note the following changes:

### POTENTIAL REDUCTIONS IN COVERAGE

Although not intended to change coverage, this change could potentially reduce or eliminate coverage depending on how it is interpreted and, in that regard, should be viewed as either an actual or potential reduction in or elimination of coverage.

- Under **SECTION I – ADDITIONAL COVERAGES**, we have added language to the **Water Damage Coverage** area of the endorsement.
  - We will pay for damages resulting from the continuous or repeated seepage or leakage of water or steam that is continuous, repeating, gradual, intermittent, slow, or trickling from a heating, air conditioning, automatic fire protection sprinkler, household appliance, or plumbing system.
  - We will not pay for fungus which is the result of continuous or repeated seepage or leakage of water or steam that is continuous, repeating, gradual, intermittent, slow, or trickling.

- Under **SECTION I – LOSSES INSURED COVERAGE B – PERSONAL PROPERTY**, item 12. **Abrupt and accidental discharge or overflow** language has been revised to provide that this peril does not include loss:
  - Caused by or resulting from the pressure from or presence of tree, shrub, or plant roots; or
  - That occurs or develops over a period of time and is caused by or is resulting from:
    - Condensation or the presence of humidity, moisture, or vapor; or
    - Seepage or leakage of water, steam, or sewage that is continuous, repeating, gradual, intermittent, slow, or trickling.

- Under **SECTION I – LOSSES INSURED COVERAGE B – PERSONAL PROPERTY**, item 13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** language has been revised to provide that this peril does not include loss that occurs or develops over a period of time and is caused by or is resulting from:
  - Condensation or the presence of humidity, moisture, or vapor; or
  - Seepage or leakage of water, steam, or sewage that is continuous, repeating, gradual, intermittent, slow, or trickling.

- Under **SECTION I – LOSSES NOT INSURED**, item 1.f.,  language has been revised to emphasize that continuous, repeating, gradual, intermittent, slow, or trickling seepage or leakage of water, steam, or sewage from a household appliance or heating, air conditioning, automatic fire protection sprinkler, or plumbing systems, occurring or developing over a period of time, is excluded from coverage. Any loss arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time is also excluded from coverage.

Endorsement **HO-2597 WATER DAMAGE ENDORSEMENT** follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is a general description of coverage and/or coverage changes and is not a statement of contract. This message does not change, modify, or invalidate any of the provisions, terms, or conditions of your policy, or any other applicable endorsements.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

## HO-2597 WATER DAMAGE ENDORSEMENT

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY and CONDOMINIUM UNITOWNERS POLICY

**SECTION I – ADDITIONAL COVERAGES**

The following is added:

**Water Damage Coverage.**

1.  *We* will pay for the deterioration, wet rot or dry rot of property described in Coverage A and Coverage B caused by the continuous or repeated seepage or leakage of water or steam that is continuous, repeating, gradual, intermittent, slow, or trickling from a:

    a.  heating, air conditioning or automatic fire protective sprinkler system;

    b.  household appliance; or

    c.  plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

    This coverage includes the cost of tearing out and replacing only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which seepage or leakage occurred.

2.  *We* will not pay for:

    a.  loss to the system or appliance from which the water or steam escaped;

    b.  loss caused by, consisting of, or resulting from *fungus*; or

    c.  *fungus* which is the result of continuous or repeated seepage or leakage of water or steam that is continuous, repeating, gradual, intermittent, slow, or trickling from a:

        (1)  heating, air conditioning or automatic fire protective sprinkler system;

        (2)  household appliance; or

        (3)  plumbing system, including from, within, or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

**SECTION I – LOSSES INSURED**

**COVERAGE B – PERSONAL PROPERTY**

The following revisions are made for the purpose of this endorsement only.

Item 12. is replaced with the following:

12.  **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

     Except as specifically provided by this endorsement, this peril does not include loss:

     a.  to the system or appliance from which the water, steam, or sewage escaped;

     b.  caused by or resulting from:

         (1)  freezing, except as specifically provided in **SECTION I – LOSSES INSURED, Freezing**;

         (2)  water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

         (3)  the pressure from or presence of tree, shrub, or plant roots; or

     c.  that occurs or develops over a period of time and is caused by or resulting from:

         (1)  condensation or the presence of humidity, moisture, or vapor; or

         (2)  seepage or leakage of water, steam, or sewage that is:

             (a)  continuous;

             (b)  repeating;

             (c)  gradual;

             (d)  intermittent;

             (e)  slow; or

             (f)  trickling.

Item 13. is replaced with the following:

13.  **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

     Except as specifically provided by this endorsement, this peril does not include loss:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

53-NJ-9952-4      007399

a.  caused by or resulting from freezing, except as specifically provided in **SECTION I – LOSSES INSURED, Freezing**; or

b.  that occurs or develops over a period of time and is caused by or resulting from:

  (1)  condensation or the presence of humidity, moisture, or vapor; or

  (2)  seepage or leakage of water or steam that is:

    (a)  continuous;

    (b)  repeating;

    (c)  gradual;

    (d)  intermittent;

    (e)  slow; or

    (f)  trickling.

**SECTION I – LOSSES NOT INSURED**

The following revisions are made for the purposes of this endorsement only.

Item 1.f. is replaced with the following:

  f.  except as specifically provided by this endorsement, seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

  (1)  and is:

    (a)  continuous;

    (b)  repeating;

    (c)  gradual;

    (d)  intermittent;

    (e)  slow; or

    (f)  trickling; and

  (2)  from a:

    (a)  heating, air conditioning, or automatic fire protective sprinkler system;

    (b)  household appliance; or

    (c)  plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

  *We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time;

Item 1.g. is replaced with the following:

  g.  wear, tear, marring, scratching, inherent vice, latent defect or mechanical breakdown;

Item 1.i. is deleted.

Item 1. k. is replaced with the following:

  k.  settling, cracking, shrinking, bulging, or expansion of pavements, patios or foundations (including slabs, basement walls, crawl space walls, and footings);

Except as stated in this endorsement *we* will not pay for any loss described in **SECTION I – LOSSES NOT INSURED**.

All other policy provisions apply.

HO-2597

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

ST-
0406-0000

53-NJ-9952-4      007400

553-3107 TX.5

# Important Notice About Your Policy



Thank you for selecting State Farm® insurance.

To complete the renewal of your policy, we may obtain and use credit information on you or another member(s) of your household as a part of the insurance credit scoring process.

This information may be used in determining the price you are being charged. If credit information was used to complete the renewal of your policy, the name of the person whose credit information was obtained will be shown on your Renewal Declarations.

If you have questions about this disclosure, contact your State Farm agent. Your agent's address and phone number are listed on the front of your Renewal Declarations. You may also contact the Texas Consumer Hot Line at:

> 1-800-STATEFARM (1-800-782-8332)
> State Farm Lloyds
> CityLine Operations Center
> 1251 State Street, Suite 1000
> P.O. Box 853907
> Richardson, Texas 75085-3907

For more information or other questions, contact the Texas Department of Insurance at:

> Texas Department of Insurance
> 1-800-252-3439
> P.O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 490-1007
> Web: www.tdi.texas.gov
> E-mail: ConsumerProtection@tdi.texas.gov
> Other Information: www.helpinsure.com

Section 559.053 of the Texas Insurance Code requires an insurer or its agents to disclose to its customers whether credit information will be obtained on the applicant or insured or on any other member(s) of the applicant's or insured's household and used as part of the insurance credit scoring process.

If credit information is obtained or used on the applicant or insured, or on any member of the applicant's or insured's household, the insurer shall disclose to the applicant the name of each person on whom credit information was obtained or used and how each person's credit information was used to underwrite or rate the policy. An insurer may provide this information with this disclosure or in a separate notice.

Adverse effect means an action taken by an insurer in connection with the underwriting of insurance for a consumer that results in the denial of coverage, the cancellation or nonrenewal of coverage, or the offer to and acceptance by a consumer of a policy form, premium rate, or deductible other than the policy form, premium rate, or deductible for which the consumer specifically applied.

Credit information is any credit-related information derived from a credit report itself, or provided in an application for personal insurance. The term does not include information that is not credit-related, regardless of whether the information is contained in a credit report or in an application for insurance coverage or is used to compute a credit score.

Credit score or insurance score is a number or rating derived from a mathematical formula, computer application, model, or other process that is based on credit information and used to predict the future insurance loss exposure of a consumer.

**SUMMARY OF CONSUMER PROTECTIONS CONTAINED IN CHAPTER 559**

**PROHIBITED USE OF CREDIT INFORMATION.** An insurer may not:

1. use a credit score that is computed using factors that constitute unfair discrimination;

2. deny, cancel, or nonrenew a policy of personal insurance solely on the basis of credit information without consideration of any other applicable underwriting factor independent of credit information; or

3. take an action that results in an adverse effect against a consumer because the consumer does not have a credit card account without consideration of any other applicable factor independent of credit information.

*(Continued)*

An insurer may not consider an absence of credit information or an inability to determine credit information for an applicant for insurance coverage or insured as a factor in underwriting or rating an insurance policy unless the insurer:

1.  has statistical, actuarial, or reasonable underwriting information that:

    (A)  is reasonably related to actual or anticipated loss experience; and

    (B)  shows that the absence of credit information could result in actual or anticipated loss differences;

2.  treats the consumer as if the applicant for insurance coverage or insured had neutral credit information, as defined by the insurer; or

3.  excludes the use of credit information as a factor in underwriting and uses only other underwriting criteria.

**NEGATIVE FACTORS.** An insurer may not use any of the following as a negative factor in any credit scoring methodology or in reviewing credit information to underwrite or rate a policy of personal insurance:

1.  a credit inquiry that is not initiated by the consumer;

2.  an inquiry relating to insurance coverage, if so identified on a consumer's credit report; or

3.  a collection account with a medical industry code, if so identified on the consumer's credit report.

Multiple lender inquiries made within 30 days of a prior inquiry, if coded by the consumer reporting agency on the consumer's credit report as from the home mortgage or motor vehicle lending industry, shall be considered by an insurer as only one inquiry.

**EFFECT OF EXTRAORDINARY EVENTS.** An insurer shall, on written request from an applicant for insurance coverage or an insured, provide reasonable exceptions to the insurer's rates, rating classifications, or underwriting rules for a consumer whose credit information has been directly influenced by a catastrophic illness or injury, by the death of a spouse, child, or parent, by temporary loss of employment, by divorce, by military deployment overseas or by identity theft. In such a case, the insurer may consider only credit information not affected by the event or shall assign a neutral credit score.

An insurer may require reasonable written and independently verifiable documentation of the event and the effect of the event on the person's credit before granting an exception. An insurer is not required to consider repeated events or events the insurer reconsidered previously as an extraordinary event.

An insurer may also consider granting an exception to an applicant for insurance coverage or an insured for an extraordinary event not listed in this section. An insurer is not out of compliance with any law or rule relating to underwriting, rating, or rate filing as a result of granting an exception under this article.

**NOTICE OF ACTION RESULTING IN ADVERSE EFFECT.** If an insurer takes an action resulting in an adverse effect with respect to an applicant for insurance coverage or insured based in whole or in part on information contained in a credit report, the insurer must provide to the applicant or insured within 30 days certain information regarding how an applicant or insured may verify and dispute information contained in a credit report.

**DISPUTE RESOLUTION; ERROR CORRECTION.** If it is determined through the dispute resolution process established under Section 611(a)(5), Fair Credit Reporting Act (15 U.S.C. Section 1681i), as amended, that the credit information of a current insured was inaccurate or incomplete or could not be verified and the insurer receives notice of that determination from the consumer reporting agency or from the insured, the insurer shall re-underwrite and re-rate the insured not later than the 30th day after the date of receipt of the notice.

After re-underwriting or re-rating the insured, the insurer shall make any adjustments necessary within 30 days, consistent with the insurer's underwriting and rating guidelines. If an insurer determines that the insured has overpaid premium, the insurer shall credit the amount of overpayment. The insurer shall compute the overpayment back to the shorter of the last 12 months of coverage; or the actual policy period.

State Farm Lloyds
Richardson, TX

**553-3107 TX.5**

(CONTINUED)

53-NJ-9952-4      007401

553-3653 TX.3

# IMPORTANT NOTICE

To obtain information or make a complaint:

You may call the State Farm® toll-free telephone number for information or to make a complaint at:

**800-STATEFARM (1-800-782-8332)**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Web: www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

To obtain price and policy form comparisons and other information relating to residential property insurance and personal automobile insurance, you may visit the Texas Department of Insurance/ Office of Public Insurance Counsel website:

**www.helpinsure.com**

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

553-3653 TX.3 (C)

# AVISO IMPORTANTE

Para obtener información o para presentar una queja:

Usted puede llamar al número de teléfono gratuito de State Farm® para obtener información o para presentar una queja al:

**800-STATEFARM (800-782-8332)**

Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos o quejas al:

**1-800-252-3439**

Usted puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Web: www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

Para obtener formas para la comparación de precios y pólizas y para obtener otra información sobre el seguro de propiedad residencial y de seguro de automóvil personal, visite el sitio web del Departamento de Seguros de Texas/Oficina del Asesor Público de Seguros:

**www.helpinsure.com**

**DISPUTAS SOBRA PRIMAS DE O RECLAMACIONES:**
Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con el agente primero. Si la disputa no es resuelta, puede comunicarse con Departamento de Seguros de Texas.

**ADJUNTE ESTE AVISO A SU PÓLIZA:**
Este aviso es solamente para propósito de informativos y no se convierte en parte o en condición del documento adjunto.

(CONTINUED)

553-3797 TX.3

# IMPORTANT NOTICE

The following information is being provided in accordance with Texas law.

Your policy includes provisions under SECTION I – CONDITIONS that state:

- You must file a claim with us not later than one year after the date of the loss that is the subject of the claim unless you show good cause for not filing the claim within this time period.  Good cause means objective facts beyond your control that reasonably caused you to fail to file a claim under the policy within the one-year claim-filing deadline.  If good cause is shown, we may extend the one-year claim-filing period.

- With respect to a loss caused by windstorm or hail in the catastrophe area as defined under Texas law, no suit or action may be brought against us unless it is started within the earlier of:

    - two years from the date we accept or reject the claim; or
    - three years from the date of the loss that is the subject of the claim.

    ***This Notice is provided for informational purposes only, and it does not change, modify or invalidate any of the provisions, terms or conditions of your policy, or any other applicable endorsements.***

**553-3797 TX.3 (C)**

553-4157

# NOTICE TO POLICYHOLDER

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes that you requested before the "Date Prepared" on your Renewal Declarations are effective on the renewal date of this policy unless indicated otherwise by a separate endorsement, binder or Amended Declarations Page.  Any coverage forms or endorsements included with your Renewal Declarations are effective on the renewal date of this policy.

Policy changes that you requested after the "Date Prepared" on your Renewal Declarations will be sent to you as an Amended Declarations Page or as an endorsement to your policy.  You will be billed for any resulting premium increase later.

If you have acquired any valuable property items, made any improvements to your home, or have questions about your insurance coverage, please contact your State Farm® agent.

**553-4157 (C)**

**State Farm Lloyds**
*A Stock Company With Home Offices in Bloomington, Illinois*

8900 Amberglen Boulevard
Austin, TX 78729-1110



AT1            H-25-2030-FB31  F H 6
   003857 3200
PARK CENTRAL CONDOMINIUM
ASSOCIATION
C/O CLASSIC PROPERTY MGMT
PO BOX 201502
ARLINGTON TX  76006-1502

ST-
0102-0000

# RENEWAL DECLARATIONS

| | |
|---|---|
| **AMOUNT DUE:** | **None** |
| **Payment is due by BILLED THROUGH SFPP** | |

**Policy Number:**    53-NJ-9952-4

**Policy Period:**    12 Months
**Effective Dates:** MAR 23 2019 to MAR 23 2020
The policy period begins and ends at 12:01 am standard time at the residence premises.

**Condominium Unitowners Policy**

**Location of Residence Premises**
11224 PARK CENTRAL PL APT A
DALLAS TX  75230-3303

**Your State Farm Agent**
MIKE MILLER-JR
1550 W BAY AREA BLVD STE 100
FRIENDSWOOD TX    77546-2666

**Phone:** (281) 486-8950  or  (281) 486-0012

| | |
|---|---|
| **Construction:** | Masonry Veneer |
| **Year Built:** | 1967 |

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lien-holder written notice in compliance with the policy provisions or as required by law.

**IMPORTANT MESSAGES**

THIS POLICY CONTAINS A POLLUTION EXCLUSION (INCLUDING BUT NOT LIMITED TO ASBESTOS AND LEAD) LOCATED UNDER SECTION II - EXCLUSIONS.
The Inflation Coverage provision may change your deductible. Refer to page 12 of your policy.

**PREMIUM**

| | |
|---|---|
| Annual Premium | $718.00 |
| Water Damage | 20.00 |
| FAIR Plan Assmt | 1.41 |
| *Your premium has already been adjusted by the following:* | |
| Home Alert Discount          Renewal Discount | |
| Home/Auto Discount | |

| | |
|---|---|
| **Total Premium** | **$738.00** |

Prepared   FEB 04 2019
HO-2000
025709  920
N

*Thanks for letting us serve you.  We appreciate our long term customers.*

Page  1 of  3

(o1F1080B)  04-04-2016

 **State Farm®**

| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS | |
|---|---|---|
| MORRISON, DORIS L | **Mortgagee**<br>PNC BANK NATIONAL ASSOCIATION<br>ISAOA<br>PO BOX 7433<br>SPRINGFIELD OH  45501-7433 | Loan Number :<br>0006283959 |
| | PARK CENTRAL CONDOMINIUM<br>ASSOCIATION<br>CLASSIC PROPERTY MGMT<br>PO BOX 201502<br>ARLINGTON TX  76006-1502 | Loan Number :<br>N/A |

## SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Building Property | $      82,400 |
| B Personal Property | $      37,500 |
| C Loss of Use | $      15,000 |
| D Loss Assessment | $       1,000 |

**Additional Coverages**

| | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage B amount/$750 per item |

## SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $     100,000 |
| Damage to the Property of Others | $       1,000 |
| M Medical Payments to Others (Each Person) | $       1,000 |

## INFLATION

Inflation Coverage Index: 252.9

## DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| All Losses | $       1,000 |

## LOSS SETTLEMENT PROVISIONS

Replacement Cost - Similar Construction - Coverage A
B1 Limited Replacement Cost - Coverage B

FEB 04 2019

o1f1080A

53-NJ-9952-4                                                **🔴 StateFarm**

## FORMS, OPTIONS, AND ENDORSEMENTS

| | |
|---|---|
| H6-2143 | Condominium Unitowners Policy |
| Option JF | Jewelry and Furs $1,500 Each |
| | Article/$2,500 Aggregate |
| HO-2597 | Water Damage Endorsement |

## ADDITIONAL MESSAGES

State Farm® works hard to offer you the best combination of price, service, and protection. The amount you pay for homeowners insurance is determined by many factors such as the coverages you have, the type of construction, the likelihood of future claims, and information from consumers reports.

**Other limits and exclusions may apply - refer to your policy**

Your policy consists of these Declarations, the Condominium Unitowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by State Farm Lloyds, Inc.

SERVICE OF PROCESS - Service of Process may be had upon the State Official duly designated for such purpose in the state in which the property insured hereunder is located if State Farm Lloyds is licensed in such state; or upon the Commissioner of Insurance of the State of Texas; or upon the duly appointed Attorney-in-Fact for State Farm Lloyds at Dallas, Texas. Underwriters at State Farm Lloyds have complied with the laws of the State of Texas regulating Lloyds plan insurance and said statutes are hereby made a part of the policy. The entire assets of State Farm Lloyds supports its policies, but each individual underwriter's liability is several and not joint and is limited by law to the amount fixed by his/her underwriter's contract and subscription and no underwriter is liable as a partner. This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no agent or other representative of State Farm Lloyds shall have the power to waive any provision or condition of this policy. This policy is non-assessable and no contingent liability of any kind and character attaches to the insured named herein.

In Witness Whereof, State Farm Lloyds has caused this policy to be signed by its President and Secretary.

State Farm Lloyds

By:

Secretary
State Farm Lloyds, Inc.
Attorney-in-Fact

President
State Farm Lloyds, Inc.
Attorney-In-Fact

# H6-2143



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars.   However, we want to point out that every policy contains limitations and exclusions.   Please read your policy carefully, especially "Losses Not Insured" and all exclusions.



State Farm®
**Condominium
Unitowners
Policy**

**Texas**
H6-2143

## CONDOMINIUM UNITOWNERS POLICY

## TABLE OF CONTENTS

**AGREEMENT** ............................................................. 1

**DEFINITIONS** ............................................................ 1

**DEDUCTIBLE** ............................................................ 5

**SECTION I – PROPERTY COVERAGES** .................. 5

  **COVERAGE A – BUILDING PROPERTY** ............. 5

    Building Property ............................................. 5

    Property Not Covered....................................... 5

  **COVERAGE B – PERSONAL PROPERTY** ........... 5

    Property Covered ............................................. 5

    Special Limits of Liability ................................. 6

    Property Not Covered ...................................... 6

  **COVERAGE C – LOSS OF USE** .......................... 7

    Additional Living Expense ................................ 8

    Fair Rental Value............................................. 8

    Prohibited Use ................................................. 8

  **COVERAGE D – LOSS ASSESSMENT** .............. 8

  **SECTION I – ADDITIONAL COVERAGES** ........... 9

    Debris Removal................................................ 9

    Temporary Repairs........................................... 9

    Trees, Shrubs, and Landscaping ..................... 9

    Property Removed ........................................... 9

    Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.................... 9

    Power Interruption ......................................... 10

    Refrigerated Products .................................... 10

    Arson Reward................................................ 10

    Volcanic Action ............................................. 10

    Collapse ........................................................ 10

    Locks and Remote Devices........................... 11

    Fuel Oil Release ............................................ 11

    Tear Out ........................................................ 11

  **INFLATION COVERAGE** ................................... 12

  **SECTION I – LOSSES INSURED** ........................ 12

    **COVERAGE A – BUILDING PROPERTY AND COVERAGE D – LOSS ASSESSMENT**............ 12

    **COVERAGE B – PERSONAL PROPERTY** ....... 12

  **SECTION I – LOSSES NOT INSURED** .................. 15

  **SECTION I – LOSS SETTLEMENT**........................ 18

    **COVERAGE A – BUILDING PROPERTY** .......... 18

    **COVERAGE B – PERSONAL PROPERTY** ....... 19

      B1 – Limited Replacement Cost Loss Settlement........................................................ 19

      B2 – Depreciated Loss Settlement ............. 19

  **SECTION I – CONDITIONS**.................................... 20

    Insurable Interest and Limit of Liability ................ 20

    Your Duties After Loss ........................................ 20

    Loss to a Pair or Set........................................... 21

    Appraisal ............................................................. 21

    Other Insurance.................................................. 22

    Suit Against Us.................................................... 22

    Our Option........................................................... 23

    Loss Payment...................................................... 23

    Abandonment of Property ................................... 23

    Mortgagee Clause............................................... 23

    No Benefit to Bailee............................................ 24

    Residential Community Property Clause.............. 24

    Our Duties After Loss ......................................... 24

    Catastrophe Claims............................................ 24

    Recovered Property ............................................ 24

    Assignment of Claim .......................................... 24

    Glass Replacement............................................. 24

  **SECTION II – LIABILITY COVERAGES** ................. 25

    **COVERAGE L – PERSONAL LIABILITY** ........... 25

    **COVERAGE M – MEDICAL PAYMENTS TO OTHERS** ............................................................. 25

    **SECTION II – ADDITIONAL COVERAGES** ........ 25

      Claim Expenses............................................. 25

      First Aid Expenses........................................ 25

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

Damage to Property of Others ...................25
**SECTION II – EXCLUSIONS**.....................................26
**SECTION II – CONDITIONS** ..................................30
  Limit of Liability ..................................................30
  Severability of Insurance.......................................30
  Duties After Loss...................................................30
  Coverage M Requirements ...................................31
  Payment of Claim – Coverage M or Damage
  to Property of Others ...........................................31
  Suit Against Us .....................................................31
  Bankruptcy of an Insured .....................................31
  Other Insurance – Coverage L...............................31
  Notice of Settlement of Liability Claim ..................31
**SECTION I AND SECTION II – CONDITIONS**.........31
  Policy Period ........................................................31
  Concealment or Fraud .........................................31
  Liberalization Clause.............................................31
  Waiver or Change of Policy Provisions.................32
  Cancellation .........................................................32
  Nonrenewal..........................................................32

Assignment of Policy ............................................ 33
Subrogation and Reimbursement.......................... 33
Death...................................................................... 33
Conformity to State Law ....................................... 33
Premium................................................................. 33
Right to Inspect ..................................................... 34
Change of Policy Address ..................................... 34
Electronic Delivery................................................. 34
Duties Regarding Claim Information ..................... 34
**OPTIONAL POLICY PROVISIONS** ........................ 35
Option AI – Additional Insured.............................. 35
Option BP – Business Property............................. 35
Option BU – Business Pursuits ............................. 35
Option FA – Firearms ............................................ 35
Option IO – Incidental Business ............................ 36
Option JF – Jewelry and Furs ............................... 37
Option SG – Silverware and Goldware
Theft ...................................................................... 37

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

## CONDOMINIUM UNITOWNERS POLICY
## AGREEMENT

*We* agree to provide the insurance described in this policy:

1. based on *your* payment of premium, in a form acceptable to *us*, for the coverages *you* chose;

2. based on *your* compliance with all applicable provisions of this policy; and

3. based on the information *you* have given *us* and *your* statements in this agreement.

*You* agree, by acceptance of this policy, that:

1. *you* will pay premiums when due and comply with the provisions of this policy;

2. the statements in this agreement are *your* statements and are true;

3. *we* insure *you* on the basis *your* statements are true; and

4. this policy contains all of the agreements between *you* and *us.* No other agreements apply to this insurance.

When *you* request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, *we* may adjust the premium in accordance with the change during the policy period and *you* must pay any additional premium due within the time *we* specify.

## DEFINITIONS

*We* define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.

1. *"actual cash value"* means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

   a. materials, including any tax;

   b. labor, including any tax; and

   c. overhead and profit;

   are subject to depreciation.

   The depreciation deduction may include such considerations as:

   a. age;

   b. condition;

   c. reduction in useful life;

   d. obsolescence; and

   e. any pre-loss damage including wear, tear, or deterioration;

   of the damaged part of the property.

2. *"association"* means the management body of the unitowners collectively.

3. *"bodily injury"* means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

   *Bodily injury* does not include:

   a. the transmission of a *communicable disease* by any *insured* to any other person;

   b. the exposure to any *communicable disease* by any *insured* to any other person; or

   c. emotional distress, mental anguish, humiliation, mental injury, or similar injury unless it arises out of actual physical injury to some person.

4. *"building structure"* means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is currently undergoing active maintenance or repairs, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

   A *building structure* includes:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

a. the foundation supporting the structure, including:

   (1)  slabs;

   (2)  basement walls;

   (3)  crawl space walls;

   (4)  footings; and

   (5)  gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b. wall-to-wall carpeting attached to the structure.

5. ***"business"*** means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an ***insured's*** principal means of livelihood. Profit and profit motive are irrelevant.

***Business*** does not include:

a. volunteer activities for a not-for-profit or non-profit organization or public agency for which no money is received other than payment of expenses;

b. incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the ***insured***;

c. any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery;

d. the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of

the actual electrical power usage by the ***residence premises*** in the 12-month period prior to the date of the loss; or

e. ownership of the ***residence premises*** by the person or organization shown in the ***Declarations*** as Additional Insured.

6. ***"business day"*** means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

7. ***"communicable disease"*** means bacteria, parasite, virus or other organism commonly transmitted from person to person due to sexual contact with an affected person or that person's discharges .

8. ***"condominium"*** means the ***condominium***, homeowners development, planned unit development, townhouse development, cooperative development, or any similar unit development, governed by the ***association*** of all unitowners of which ***you*** are a member and in which the ***residence premises*** is located.

9. ***"Declarations"*** means the policy ***Declarations***, any amended ***Declarations***, the most recent renewal ***Declarations***, an Evidence of Insurance form, or any endorsement changing any of these.

10. ***"diminution in value"*** means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

11. ***"dwelling"*** means that part of the ***building structure*** on the ***residence premises*** used as the primary private residence.

12. ***"fungus"*** means any type or form of ***fungus***, including mold, mildew, mycotoxins, spores, scents, or byproducts produced or released by fungi.

13. ***"insured"*** means:

a. ***you***;

b. ***your relatives***; and

c. any other person under the age of 21 in the care of a person described above, including children in a joint custody situation even if they do not reside primarily with ***you***.

Under Section II, ***insured*** also means:

d. the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

be owned by **you** or a person included in 13.b. or 13.c. above. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

e. with respect to any vehicle to which this policy applies, any person while engaged in **your** employment or the employment of a person included in 13.b. or 13.c. above.

14. **"insured location"** means:

a. the **residence premises**;

b. the part of any other premises, other structures, and grounds used by **you** as a residence. This includes premises, structures, and grounds **you** acquire while this policy is in effect for **your** use as a residence;

c. any premises used by **you** in connection with the premises included in 14.a. or 14.b. above;

d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

f. individual or family cemetery plots or burial vaults owned by an **insured**;

g. any part of a premises occasionally rented to an **insured** for purposes other than **business**;

h. vacant land owned by or rented to an **insured**. For the purposes of this definition, vacant land does not include:

(1) farm land;

(2) land containing a residence; or

(3) land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures, unless they are used solely for the personal use of the **insured**; or

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

15. **"loss insured"** means a loss as described under **SECTION I – LOSSES INSURED**, **COVERAGE A – BUILDING PROPERTY** and **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**.

16. **"motor vehicle"**, when used in Section II of this policy, means:

a. a land **motor vehicle** designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational or utility vehicle" while off an **insured location**. "Recreational or utility vehicle" means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an **insured**. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

d. a "locomotive" while off an **insured location**. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an **insured**. "Leased" does not include temporary rental;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an **insured** while off an **insured location**. "Leased" does not include temporary rental; and

f. any vehicle while being towed or pushed by or carried on a vehicle included in 16.a. through 16.e. above.

The following are not **motor vehicles**:

a. a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 16.a. through 16.e. above;

3

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

b. a motorized land vehicle in storage on an *insured location* not intended to be operated for an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

c. a motorized golf cart while used for golfing purposes;

d. a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or

e. a commercially manufactured two, three, or four wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

17. *"occurrence"*, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a. *bodily injury*; or

b. *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one *occurrence*.

18. *"property damage"* means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any *insured* is not *property damage*.

19. *"relative"* means any person related to *you* by:

a. blood;

b. adoption;

c. marriage; or

d. civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

and who resides primarily with *you*.

20. *"residence employee"* means an employee of an *insured*, or an employee leased to an *insured* by a labor leasing firm under an agreement between an *insured* and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the *residence premises*. This includes employees who perform similar duties elsewhere for *you*. This does not include employees while performing duties in connection with the *business* of an *insured*.

Any employee of the *association* in the course of employment by the *association* is not a *residence employee*. This limitation does not apply to **SECTION I – PROPERTY COVERAGES**, **COVERAGE D – LOSS ASSESSMENT**.

21. *"residence premises"* means the described premises shown in the *Declarations*, other structures, and grounds reserved for *your* exclusive use and occupancy.

22. *"State Farm Companies"* means one or more of the following:

a. State Farm Mutual Automobile Insurance Company;

b. State Farm Fire and Casualty Company; and

c. subsidiaries or affiliates of either 22.a. or 22.b. above.

23. *"vacant dwelling"* means:

a. a dwelling:

(1) that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

(2) where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

A dwelling will be considered occupied only if it is being used as a habitual place of residence with *your* knowledge and approval.

b. A dwelling that is under active construction will not be considered a *vacant dwelling*. A dwelling is under active construction when it is:

(1) being built as a new structure;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

(2) being repaired due to damage otherwise covered by this policy; or

(3) undergoing substantial improvements, renovations, remodeling, or modifications;

and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods.

24. **"we"**, **"us"**, and **"our"** mean the Company shown in the *Declarations*.

25. **"you"** and **"your"** mean the person or persons shown as "Named Insured" in the *Declarations*. If a "Named Insured" shown in the *Declarations* is a human being, then *you* and *your* include:

a. a spouse of a "Named Insured";

b. a party to a civil union with a "Named Insured";

c. a domestic partner of a "Named Insured"; or

d. a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

## DEDUCTIBLE

In case of loss under this policy, *we* will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the *Declarations*. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – BUILDING PROPERTY

1. **Building Property. *We*** cover:

a. alterations, appliances, fixtures, and improvements that are part of the building contained within *your* unit;

b. items of real property that pertain exclusively to *your* unit; or

c. property that is *your* insurance responsibility under the governing rules of the *condominium*.

This coverage also includes *your* share of any *association* deductible but only when the deductible is not assessed against all unitowners.

2. **Property Not Covered. *We*** do not cover:

a. land, including the land necessary to support any Coverage A property. *We* also do not cover:

(1) any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

(2) the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A;

b. trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**; or

c. systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

### COVERAGE B – PERSONAL PROPERTY

1. **Property Covered.**

a. *We* cover personal property owned or used by an *insured* while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At *your* request, *we* will cover personal property:

(1) owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

(2) owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

    (3)  owned by roomers, boarders, tenants, and other residents, any of whom are related to **you**.

b.  **We** cover personal property usually located at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

    (1)  in a newly acquired principal residence for the first 30 days after **you** start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in **your** immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

    (2)  of a student who is an **insured** while located at a residence away from the **residence premises**.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a.  $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

b.  $1,500 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $750 on such property away from the **residence premises**.

    Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

c.  $10,000 on electronic data processing system equipment used or intended for use in a **business**, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

d.  $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

e.  $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

f.  $1,500 on trailers not used with watercraft;

g.  $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

h.  $2,500 for loss by theft of firearms;

i.  $2,500 for loss by theft of silverware and goldware;

j.  $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

k.  $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

    (1)  designed for assisting persons with disabilities;

    (2)  not designed for travel on public roads; and

    (3)  not subject to motor vehicle registration; and

l.  $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

2.  **Property Not Covered. We** do not cover:

a.  articles separately described and specifically insured in this or any other insurance;

b.  animals, birds, or fish;

c.  any engine-propelled or motor-propelled vehicle or machine, including parts, designed for move-

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

ment on land, except as provided in **Special Limits of Liability**, item k.  However, *we* do not cover those vehicles or machines:

(1)  that are:

  (a)  not designed for travel on public roads; and

  (b)  not subject to motor vehicle registration;

(2)  and that are:

  (a)  used primarily to service the *insured location*; or

  (b)  designed for assisting persons with disabilities;

d.  any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system.  *We* also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e.  aircraft and parts.  This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f.  property of roomers, boarders, tenants, and other residents not related to *you*;

g.  property regularly rented or held for rental to others by an *insured*.  This does not apply to property of an *insured*:

(1)  in a sleeping room when the *dwelling* is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

(2)  on the *residence premises* if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h.  property rented or held for rental to others away from the *residence premises*;

i.  any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j.  books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records.  This does not apply to any recording or storage media for electronic data processing.  *We* will cover the cost of blank books, cards, or other blank material plus the cost of labor *you* incur for transcribing or copying such records;

k.  recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l.  purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m.  contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n.  outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**;

o.  electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange; or

p.  personal property collectively owned by unit-owners of the *condominium*.

**COVERAGE C – LOSS OF USE**

The most *we* will pay for the sum of all losses combined under **Additional Living Expense**, **Fair Rental Value**,

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

and **Prohibited Use** is the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**.

1. **Additional Living Expense.** When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

   a. the time required to repair or replace the premises;

   b. the time required for *your* household to settle elsewhere; or

   c. 24 months.

   This period of time is not limited by the expiration of this policy.

   *We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. **Prohibited Use.** *We* will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of loss that would be a *loss insured* under this policy if the damage had occurred to property on the *residence premises*;

   b. the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

   c. the action of the civil authority is taken in response to:

      (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

      (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

      (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

   *We* will not pay for loss or expense due to cancellation of a lease or agreement.

**COVERAGE D – LOSS ASSESSMENT**

*We* will pay for *your* share of any assessment charged against all unitowners by the *association*, when the assessment is made as a result of:

1. a direct physical loss to *condominium* property (including personal property) owned by all unitowners collectively that occurs during the policy period to which Section I of this policy would apply, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED**. Any Earthquake and Volcanic Explosion Endorsement applicable to Coverage A shall also apply to Coverage D;

2. an *occurrence* during the policy period to which Section II of this policy would apply;

3. damages that occur during the policy period that the *association* may be obligated to pay because of personal injury due to false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention, malicious prosecution, misrepresentation, or humiliation;

4. illegal discrimination (unless coverage is prohibited by law) that occurs during the policy period, but only with respect to liability other than fines and penalties imposed by law; or

5. libel, slander, defamation of character, or invasion of rights of privacy that occur during the policy period.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

*We* will not pay *your* share of any assessment charged against all unitowners by the *association* made as a result of items 1. through 5. above that does not occur within the policy period.

**Limit of Liability.** The **COVERAGE D – LOSS ASSESS-MENT** limit is shown in the *Declarations*. The most *we* will pay for all assessments arising out of the same event from items 1. through 5. above is the amount shown in the *Declarations*.

**SECTION I – ADDITIONAL COVERAGES**

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1.  **Debris Removal.** *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured*. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

    a.  When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**.

    b.  *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

        (1)  the tree has caused a *loss insured* to Coverage A property; or

        (2)  the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

            (a)  the driveway, on the *residence premises*, and prevents land *motor vehicle* access to or from the *dwelling*; or

            (b)  a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2.  **Temporary Repairs.** If damage is caused by a *loss insured*, *we* will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3.  **Trees, Shrubs, and Landscaping.** *We* will pay for accidental direct physical loss to outdoor:

    a.  trees, shrubs, live or artificial plants, and lawns;

    b.  artificial grass; and

    c.  hardscape property used for aesthetic purposes not permanently affixed to realty;

    on the *residence premises*, caused by the following perils: **Fire or lightning**, **Explosion**, **Riot or civil commotion**, **Aircraft**, **Vehicles** (not owned or operated by a resident of the *residence premises*), **Vandalism or malicious mischief**, or **Theft**.

    The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for **COVERAGE B – PERSONAL PROPERTY**. *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

4.  **Property Removed.** *We* will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*. This coverage also applies to the property for up to 30 days while removed. *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

5.  **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

    a.  *We* will pay up to $1,000 for:

        (1)  the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name. If an *insured* has not complied with all terms

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

and conditions under which the cards are is-sued, *we* will not pay for use by an *insured* or anyone else;

(2) loss to an *insured* caused by forgery or al-teration of any check or negotiable instru-ment; and

(3) loss to an *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

*We* will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. *We* will not pay for loss arising out of *business* pursuits or dishonesty of an *insured*.

c. Defense:

(1) *We* may make any investigation and settle any claim or suit that *we* decide is appro-priate. *Our* obligation to defend claims or suits ends when the amount *we* pay for the loss equals *our* limit of liability.

(2) If claim is made or a suit is brought against an *insured* for liability under the Credit Card or Bank Fund Transfer Card coverage, *we* will provide a defense. This defense is at *our* ex-pense by counsel of *our* choice.

(3) *We* have the option to defend at *our* ex-pense an *insured* or an *insured's* bank against any suit for the enforcement of pay-ment under the Forgery coverage.

6. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines off the *residence premises* must remain ener-gized. This coverage does not increase the limit ap-plying to the damaged property.

7. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units

on the *residence premises* for loss due to power fail-ure or mechanical failure. If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from fur-ther damage or this coverage is void. Power failure or mechanical failure does not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a *loss insured*.

This coverage does not increase the limit applying to the damaged property.

8. **Arson Reward.** *We* will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit will not be increased regardless of the num-ber of persons providing information.

9. **Volcanic Action.** *We* will pay for accidental direct physical loss to a covered *building structure* or cov-ered property contained in a *building structure* re-sulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. airborne volcanic shock waves;

b. ash, dust, or particulate matter; or

c. lava flow.

*We* will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered *building structure* or cov-ered property contained in a *building structure*.

All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

10. **Collapse.** *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure*.

a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building struc-ture* or any part of a *building structure*. Collapse does not include any of the following:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

(1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

(2) substantial structural impairment;

(3) imminent or threatened collapse;

(4) a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

(5) a part of a *building structure* that is standing even if:

   (a) it has separated from another part of the *building structure*; or

   (b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

b. The collapse must be directly and immediately caused by one or more of the following:

(1) perils described in **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**. These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

(2) decay or deterioration of, or damage from animals, birds, or insects to:

   (a) a connector; or

   (b) a structural member of a *building structure*;

The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

(3) weight of contents, equipment, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

11. **Locks and Remote Devices.** *We* will pay up to $1,000 for each loss for the reasonable expenses *you* incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

12. **Fuel Oil Release.** *We* will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only. *We* will not pay for:

a. the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b. the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

13. **Tear Out.** If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, *we* will also pay the reasonable cost *you* incur to tear out and replace only that

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

particular part of the ***building structure*** or ***condominium*** unit owned by ***you*** necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. ***We*** will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

**INFLATION COVERAGE**

The limits of liability shown in the ***Declarations*** for Coverage A and Coverage B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the ***Declarations***.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A and Coverage B separately.

The limits of liability will not be reduced to less than the amounts shown in the ***Declarations***.

If during the term of this policy the Coverage B limit of liability is changed at ***your*** request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

This Inflation Coverage provision does not apply to the limit of liability of Coverage A when both:

1. the limit of liability of Coverage B is less than $10,000; and

2. the limit of liability of Coverage A is no more than $1,000.

## SECTION I – LOSSES INSURED

**COVERAGE A – BUILDING PROPERTY AND COVERAGE D – LOSS ASSESSMENT**

***We*** will pay for accidental direct physical loss to the property described in Coverage A and Coverage D, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. Accidental means happening by chance, unexpectedly, and/or unintended from ***your*** standpoint. However, loss does not include and ***we*** will not pay for, any ***diminution in value***.

**COVERAGE B – PERSONAL PROPERTY**

***We*** will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. Accidental means happening by chance, unexpectedly, and/or unintended from ***your*** standpoint. However, loss does not include and ***we*** will not pay for, any ***diminution in value***.

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a ***building structure***.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

   a. This includes:

      (1) the impact of a vehicle;

      (2) an object propelled from the tire or body of a vehicle;

      (3) the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

      (4) a vehicle door or trunk lid being closed on personal property.

   b. This peril does not include loss:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

(1) to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

(2) caused by shifting of the load being carried in or on a vehicle; or

(3) to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

7. **Smoke**, meaning abrupt and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief**, meaning only willful and malicious damage to or destruction of property.

9. **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

This peril does not include:

a. loss of a precious or semi-precious stone from its setting;

b. loss caused by theft:

(1) committed by an *insured* or by any other person regularly residing on the *insured location*. Property of a student who is an *insured* is covered while located at a residence away from the *residence premises*, if the theft is committed by a person who is not an *insured*;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a *residence premises* rented to others:

(a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the *residence premises* is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

(b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

(c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

(d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the *residence premises* of:

(1) property while at any other residence owned, rented to, or occupied by an *insured*, except while an *insured* is temporarily residing there. Property of a student who is an *insured* is covered while at a residence away from the *residence premises*;

(2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the *residence premises* is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the *residence premises* for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing,

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

  (1) freezing, except as specifically provided in **SECTION I – LOSSES INSURED**, **Freezing**;

  (2) water or sewage from outside the ***residence premises*** plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

  (3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

  (1) condensation or the presence of humidity, moisture, or vapor; or

  (2) seepage or leakage of water, steam, or sewage that is:

    (a) continuous;

    (b) repeating;

    (c) gradual;

    (d) intermittent;

    (e) slow; or

    (f) trickling.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; except as specifically provided in **SECTION I – LOSSES INSURED**, **Freezing**; or

b. that occurs or develops over a period of time and is caused by or resulting from:

  (1) condensation or the presence of humidity, moisture, or vapor; or

  (2) seepage or leakage of water or steam that is:

    (a) continuous;

    (b) repeating;

    (c) gradual;

    (d) intermittent;

    (e) slow; or

    (f) trickling.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless ***you*** have used reasonable care to prevent freezing; or

b. loss on the ***residence premises*** unless ***you*** have used reasonable care to:

  (1) maintain heat in the ***building structure*** at 55 degrees Fahrenheit or higher; or

  (2) shut off the water supply and drain the system and appliances of water.

  However, if the ***building structure*** is protected by an automatic fire protective sprinkler system, ***you*** must use reasonable care to continue the water supply and maintain heat in the ***building structure*** at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

or decrease of artificially generated electrical current. *We* will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of

a structure on the ***residence premises***.  *We* will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a ***building structure***.

## SECTION I – LOSSES NOT INSURED

1. *We* will not pay for any loss to the property described in Coverage A and Coverage D that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

    a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse**;

    b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing.  This does not apply if *you* have used reasonable care to:

        (1) maintain heat in the ***building structure*** at 55 degrees Fahrenheit or higher; or

        (2) shut off the water supply and drain the system and appliances of water.

        However, if the ***building structure*** is protected by an automatic fire protective sprinkler system, ***you*** must use reasonable care to continue the water supply and maintain heat in the ***building structure*** at 55 degrees Fahrenheit or higher for coverage to apply;

    c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

        (1) a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

        (2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

    d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

    e. theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a ***vacant dwelling***;

    f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

        (1) and is:
            (a) continuous;
            (b) repeating;
            (c) gradual;
            (d) intermittent;
            (e) slow; or
            (f) trickling; and

        (2) from a:
            (a) heating, air conditioning, or automatic fire protective sprinkler system;
            (b) household appliance; or
            (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

        *We* also will not pay for losses arising from condensation or the presence of humidity, moisture,

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

or vapor that occurs or develops over a period of time;

g.  wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h.  corrosion, electrolysis, or rust;

i.  wet or dry rot;

j.  contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**.

(1)  Contaminants and pollutants include but are not limited to any:

(a)  solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

(b)  contaminants or pollutants resulting from any natural resource extraction activities; or

(c)  fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Fuel Oil Release**.

(2)  **We** also will not pay for:

(a)  losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

(b)  the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

(c)  the cost of testing, monitoring, cleaning, removing, containing, treating,

detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

(3)  However, **we** will pay for losses caused by:

(a)  contamination from pollutants that escape from heating and air conditioning systems and appliances; or

(b)  common household chemicals used to maintain the **residence premises**;

k.  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

l.  all animals, birds, or insects.

(1)  This includes:

(a)  nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

(b)  costs to remove animals, birds, or insects from the covered property; and

(c)  costs to prevent the animals, birds, or insects from returning to the property;

(2)  However, **we** will pay for:

(a)  losses caused by wild bears or deer; and

(b)  the breakage of glass or safety glazing material that is a part of a **building structure**, when caused by animals, birds, or insects; or

m.  pressure from or presence of tree, shrub, or plant roots.

However, **we** will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2.  **We** will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. **We** will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually,

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

involves isolated or widespread damage, occurs on or off the **residence premises**, arises from any natural or external forces, or occurs as a result of any combination of these:

a.  **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a **building structure** or other structure.

b.  **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth.  Earth movement includes but is not limited to:

   (1)  earthquake;

   (2)  landslide, mudslide, or mudflow;

   (3)  sinkhole or subsidence;

   (4)  movement resulting from:

      (a)  improper compaction;

      (b)  site selection;

      (c)  natural resource extraction activities; or

      (d)  excavation;

   (5)  erosion;

   (6)  pressure by surface or subsurface earth or fill; or

   (7)  any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action**.

However, **we** will pay for any accidental direct physical loss by fire resulting from earth movement, provided the resulting fire loss is itself a **loss insured**.

c.  **Water**, meaning:

   (1)  flood;

   (2)  surface water.  This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

   (3)  waves (including tidal wave, tsunami, and seiche);

   (4)  tides or tidal water;

   (5)  overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

   (6)  spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

   (7)  water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

   (8)  water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a **building structure**, sidewalk, driveway, swimming pool, or other structure; or

   (9)  material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, **we** will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a **loss insured**.

d.  **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e.  **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these.  Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f.  **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

However, *we* will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a *loss insured*.

g. *Fungus*, including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement, by *fungus*;

(2) any remediation of *fungus*, including the cost to:

(a) remove the *fungus* from covered property or to repair, restore, or replace that property; or

(b) tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus*; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

However, the presence of *fungus* on covered property does not negate coverage for that part of the covered property otherwise damaged by a *loss insured*.

h. **Intentional Losses**. If any *insured* intentionally causes or procures a loss to property covered under this policy, *we* will not pay any *insured* for this loss. This applies regardless of

whether the *insured* is charged with or convicted of a crime.

This does not apply to an *insured* who did not participate in, cooperate in, or contribute to causing or procuring the loss.

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault, or unsoundness in:

(1) planning, zoning, development, surveying, or siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

c. weather conditions.

However, *we* will pay for any resulting loss from items 3a., 3b., and 3c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

## SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply. *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

**COVERAGE A – BUILDING PROPERTY**

1. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

building property covered under **SECTION I – PROP-ERTY COVERAGES**, **COVERAGE A – BUILDING PROPERTY**, except for wood fences, subject to the following:

a. until actual repair or replacement is completed, **we** will pay only the **actual cash value** of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

b. when the repair or replacement is actually completed, **we** will pay the covered additional amount **you** actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

c. to receive any additional payments on a replacement cost basis, **you** must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and give prompt notice to **us** after the work has been completed; and

d. **we** will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a **building** or other structure.

2. Wood Fences: **We** will pay the **actual cash value** for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for **COVERAGE A – BUILDING PROPERTY**.

**COVERAGE B – PERSONAL PROPERTY**

1. **B1 – Limited Replacement Cost Loss Settlement.**

a. **We** will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, **we** will pay only the **actual cash value** of the damaged property;

(2) after repair or replacement is completed, **we** will pay the difference between the **actual cash value** and the cost **you** have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, **we** will pay only the **actual cash value**.

b. **We** will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

However, **we** will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) **our** cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

2. **B2 – Depreciated Loss Settlement.**

a. **We** will pay the **actual cash value** for property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below.

b. **We** will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

(3)   property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1)   *our* cost to replace at the time of loss;

(2)   the full cost of repair;

(3)   any special limit of liability described in this policy; or

(4)   any applicable Coverage B limit of liability.

## SECTION I – CONDITIONS

1.   **Insurable Interest and Limit of Liability.**  Even if more than one person has an insurable interest in the property covered, *we* will not be liable:

a.   to the *insured* for an amount greater than the *insured's* interest; or

b.   for more than the applicable limit of liability.

**Fire Insurance: Total Loss Of Real Property.** A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This subsection does not apply to personal property.

2.   **Your Duties After Loss.**  After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:

a.   give prompt notice to *us* or *our* agent and also notify:

(1)   the police if the loss is caused by theft, vandalism, or any other criminal act; and

(2)   the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b.   protect the property from further damage or loss and also:

(1)   make reasonable and necessary temporary repairs required to protect the property; and

(2)   keep an accurate record of repair expenses;

c.   prepare an inventory of damaged or stolen personal property:

(1)   showing in detail the quantity, description, age, replacement cost, and amount of loss; and

(2)   attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

d.   as often as *we* reasonably require:

(1)   exhibit the damaged property;

(2)   provide *us* with any requested records and documents and allow *us* to make copies;

(3)   while not in the presence of any other *insured*:

(a)   give statements; and

(b)   submit to examinations under oath. A parent or legal guardian may be present when the person being examined under oath is a minor; and

(4)   produce employees, members of the *insured's* household, or others for examination under oath to the extent it is within the *insured's* power to do so;

e.   submit to *us*, within 91 days after *our* request, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

(1)   the time and cause of loss;

(2)   interest of the *insured* and all others in the property involved and all encumbrances on the property;

(3)   other insurance that may cover the loss;

(4)   changes in title or occupancy of the property during the term of this policy;

(5)   specifications of any damaged structure and detailed estimates for repair of the damage;

(6)   an inventory of damaged or stolen personal property described in 2.c.;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES**, **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss; and

f.  *you* must file a claim with *us* not later than one year after the date of the loss that is the subject of the claim unless *you* show good cause for not filing the claim within this time period, subject to the following conditions:

(1) for the purpose of this provision, good cause means: objective facts beyond *your* control that reasonably caused *you* to fail to file a claim under the policy within the one-year claim-filing deadline;

(2) if good cause is shown, *we* may extend the one-year claim-filing period. The extension is limited to the claim for which it is granted; and

(3) a request for an extension must:

    (a) be submitted to *us* in writing;

    (b) describe the good cause that caused *you* to miss the one-year claim-filing deadline; and

    (c) be signed by *you* or *your* legal representative.

3.  **Loss to a Pair or Set.**  In case of loss to a pair or set, *we* may choose to:

a.  repair or replace any part to restore the pair or set to its value before the loss; or

b.  pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4.  **Appraisal.**  If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal.  Only *you* or *we* may demand appraisal.  A demand for appraisal must be in writing.  **You** must comply with **SECTION I – CONDITIONS**, **Your Duties After Loss** before making a demand for appraisal.  At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with

written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a.  Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b.  The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them.  In all instances the written report of agreement will be itemized and state separately the *actual cash value,* replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*.

c.  If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire.  If the appraisers are unable to agree upon an umpire within 15 days:

(1) *you* or *we* may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the *residence premises* is located to select an umpire;

(2) the party requesting the selection described in item c.(1) must provide the other party:

    (a) written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

    (b) a copy of the written application; and

(3) a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute and will

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

be binding upon **you** and **us**. In all instances the written report of agreement will be itemized and state separately the **actual cash value**, replacement cost, and if applicable, the market value of each item in dispute.

d.   To qualify as an appraiser or umpire for a loss to building property, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

(1)   an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

(2)   an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or

(3)   a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute.

e.   A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

(1)   has performed services for either party with respect to the claim at issue in the appraisal; or

(2)   has a financial interest in the outcome of the claim at issue in the appraisal.

f.   Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by **you** and **us**.

g.   **You** and **we** do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h.   Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

(1)   any other questions of fact;

(2)   questions of law;

(3)   questions of coverage;

(4)   other contractual issues; or

(5)   to conduct appraisal on a class-wide basis.

i.   Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

j.   A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5.   a.   **Other Insurance** (with respect to all coverages except **COVERAGE D – LOSS ASSESS-MENT**). If a loss covered by this policy is also covered by other insurance, except insurance in the name of the **condominium**, **we** will pay only **our** share of the loss. **Our** share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

If, at the time of loss, there is other insurance in the name of the **condominium** covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance.

b.   **Other Insurance** (with respect to **COVERAGE D – LOSS ASSESSMENT**). If a loss covered by this policy is also covered by other insurance, this insurance will be excess over other insurance in the name of the **condominium** covering the same property covered by this policy.

6.   **Suit Against Us.** No suit or action can be brought unless:

a.   there has been compliance with the policy provisions;

b.   except as provided in item c. below, suit or action brought against **us** is started within two years and one day after the cause of action accrues; and

c.   with respect to a loss caused by windstorm or hail in the catastrophe area as defined under Texas law, suit or action brought against **us** is started within the earlier of:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

(1) two years from the date *we* accept or reject the claim; or

(2) three years from the date of the loss that is the subject of the claim.

7. **Our Option.** *We* may repair or replace any part of the property damaged or stolen with similar property. Any property *we* pay for or replace becomes *our* property.

8. **Loss Payment.** *We* will adjust all losses with *you*. *We* will pay *you* unless some other person is named in the policy or is legally entitled to receive payment.

If *we* notify *you* that *we* will pay *your* claim, or part of *your* claim, *we* must pay within 5 *business days* after *we* notify *you*. If payment of *your* claim or part of *your* claim requires the performance of an act by *you*, *we* must pay within 5 *business days* after the date *you* perform the act.

9. **Abandonment of Property.** *We* need not accept any property abandoned by an *insured*.

10. **Mortgage Clause** (without contribution).

a. The word "mortgagee" includes trustee.

b. *We* will pay for any covered loss of or damage to buildings or structures to the mortgagee shown in the *Declarations* as interests appear.

c. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

d. If *we* deny *your* claim because of *your* acts or because *you* have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

(1) at *our* request, pays any premiums due under this policy, if *you* have failed to do so;

(2) submits a signed, sworn statement of loss within 91 days after receiving notice from *us* of *your* failure to do so; and

(3) has notified *us* of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

All of the terms of this policy will then apply directly to the mortgagee.

Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

e. If *we* pay the mortgagee for any loss or damage and deny payment to *you* because of *your* acts or because *you* have failed to comply with the terms of this policy:

(1) the mortgagee's rights under the mortgage will be transferred to *us* to the extent of the amount *we* pay; and

(2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

At *our* option, *we* may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, *your* mortgage and note will be transferred to *us* and *you* will pay *your* remaining mortgage debt to *us*.

f. If this policy is cancelled, *we* will give the mortgagee specifically named in the *Declarations* written notice of cancellation.

If *we* cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to *you*.

If *you* cancel the policy, *we* will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date *we* mail the notice.

*We* will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

g. If the property described under Coverage A (Building Property) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

h.  If *we* elect not to renew this policy, the mortgagee specifically named in the *Declarations* will be given 30 days written notice of the nonrenewal.

11. **No Benefit to Bailee.  We** will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee.  This applies regardless of any other provision of this policy.

12. **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

13. **Our Duties After Loss.**

a.  Within 15 days after *we* receive *your* written notice of claim, *we* must:

(1) acknowledge receipt of the claim. If *our* acknowledgment of the claim is not in writing, *we* will keep a record of the date, method and content of *our* acknowledgment;

(2) begin any investigation of the claim;

(3) specify the information *you* must provide in accordance with "**Your Duties After Loss**" (item 2. above).

*We* may request more information, if during the investigation of the claim such additional information is necessary.

b.  After *we* receive the information *we* request, *we* must notify *you* in writing whether the claim will be paid or has been denied or whether more information is needed:

(1) within 15 *business days*; or

(2) within 30 days if *we* have reason to believe the loss resulted from arson.

c.  If *we* do not approve payment of *your* claim or require more time for processing *your* claim, *we* must:

(1) give the reasons for denying *your* claim; or

(2) give the reasons *we* require more time to process *your* claim. But, *we* must either approve or deny *your* claim within 45 days after requesting more time.

14. **Catastrophe Claims.** If a claim results from a weather related catastrophe or major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

a.  is declared a disaster under the Texas Disaster Act of 1975; or

b.  is determined to be a catastrophe by the Texas Department of Insurance.

15. **Recovered Property.**  If either *you* or *we* recover any property after loss settlement, that party must give the other prompt notice.  At *your* option, *you* may keep the property or *we* will return it to *you*.  Otherwise, it will become *our* property.  If *you* choose to keep the property, the loss payment will be adjusted based on the amount *you* received for the recovered property.

16. **Assignment of Claim.**  Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.  However, once *you* have complied with all policy provisions, *you* may assign to another party, in writing, payment of claim proceeds otherwise payable to *you*.

17. **Glass Replacement.**  Loss for damage to glass caused by a *loss insured* will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

## SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:

1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable; and

2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

### COVERAGE M – MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

   a. arises out of a condition on the *insured location* or the ways immediately adjoining;

   b. is caused by the activities of an *insured*;

   c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

   d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

### SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses.** *We* will pay:

   a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend.

   b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

   c. reasonable expenses an *insured* incurs at *our* request. This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding *us* in the investigation or defense of claims or suits;

   d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) the Coverage L limit; and

   e. interest on the entire judgment that accrues after entry of the judgment and before *we* pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses.** *We* will pay expenses for first aid to others incurred by an *insured* for *bodily injury* covered under this policy. *We* will not pay for first aid to *you* or any other *insured*.

3. **Damage to Property of Others.**

   a. *We* will pay for *property damage* to property of others caused by the activities of an *insured*.

   b. *We* will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

(3) the limit of liability shown in the *Declarations* for **Damage to Property of Others** for any one *occurrence*.

c. *We* will not pay for *property damage*:

(1) for a loss that is recoverable under Section I of this policy. *We* also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

(2) caused intentionally by an *insured* 13 years of age or older;

(3) to property, other than a rented golf cart, owned by, or rented to an *insured*, a tenant of an *insured*, or a resident in *your* household;

(4) arising out of:

## SECTION II – EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. *bodily injury* or *property damage* that:

(1) was a result of a willful and malicious act or omission of the *insured*;

(2) was intended by the *insured*; or

(3) was expected by the *insured*.

However, exclusions a.(2) and a.(3) above do not apply to *bodily injury* or *property damage* resulting from the use of reasonable force to protect persons or property.

Exclusions a.(1), a.(2), and a.(3) above apply to all *bodily injury* or *property damage* even if the:

(1) *bodily injury* or *property damage* was sustained by a different person, entity, or property than was expected or intended;

(2) *bodily injury* or *property damage* was of a different kind, quality, or degree than was expected or intended;

(3) *insured* was not charged with or convicted of a criminal act or omission; or

(4) *insured* was impaired by drugs or alcohol;

(a) *business* pursuits;

(b) any act or omission in connection with a premises an *insured* owns, rents, or controls, other than the *insured location*;

(c) a condition on the *insured location* or the ways immediately adjoining; or

(d) the ownership, maintenance, or use of a *motor vehicle*, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

(5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same *property damage*.

b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits;

c. *bodily injury* or *property damage* arising out of the rental of any part of any premises by any *insured*. This exclusion does not apply:

(1) to the rental of the *residence premises*:

(a) either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

(b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

(c) in part, as an office, school, studio, or private garage;

(2) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations;

(3) with respect to loss under Coverage D; or

(4) to activities that are ordinarily incident to non-*business* pursuits;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

d. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services. This exclusion does not apply to Coverage D;

e. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

f. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading, or unloading of:

(1) an aircraft. This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

(a) solely for recreational or hobby purposes;

(b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

(c) weighing not more than 55 pounds at the time of operation;

unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

(a) **property damage** to any aircraft; or

(b) **bodily injury** or **property damage** resulting from interference with an aircraft carrying people regardless of whether the **bodily injury** or **property damage** is sustained by people or property on the aircraft or not;

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any **insured** if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion f.(3) does not apply while the watercraft is on the **residence premises**;

g. **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or **motor vehicle** not covered under Section II of this policy;

h. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. **bodily injury** to any **insured** within the meaning of part 13.a., 13.b., or 13.c. of the definition of **insured**.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

This exclusion also applies to any claim made or suit brought against any *insured* within the meaning of part 13.a., 13.b., or 13.c. of the definition of *insured* to share damages with or repay someone else who may be obligated to pay damages because of the *bodily injury* sustained by any *insured* within the meaning of part 13.a., 13.b., or 13.c. of the definition of *insured*;

j. any claim made or suit brought against any *insured* by:

(1) any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*; or

(2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age;

k. *bodily injury* or *property damage* arising out of an *insured's* participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l. *bodily injury* or *property damage* arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any *insured*, of

any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional;

m. *bodily injury* or *property damage* arising out of the actual, alleged, or threatened presence, discharge, dispersal, seepage, migration, release, escape of, or exposure to contaminants or pollutants at or from any source or location.

Contaminants and pollutants include but are not limited to any solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, fuel oil, asbestos, or lead.

This exclusion does not apply to *bodily injury* or *property damage*:

(1) caused by contaminants or pollutants from a hostile fire. A hostile fire is one that cannot be controlled, escapes from where it was initially set and confined, or was not intended to exist;

(2) caused by contaminants or pollutants that escape from heating and air conditioning systems and appliances; or

(3) caused by common household chemicals used to maintain the *residence premises*.

*We* also do not cover:

(1) any loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of contaminants or pollutants;

(2) any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or

28

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

in any way responding to or assessing the effects of contaminants or pollutants; or

(3) contamination or pollution arising out of actually or allegedly defective building materials, nuclear substances, or waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

n. *bodily injury* or *property damage* arising out of any actual, alleged, or threatened:

(1) sexual harassment, sexual molestation, or sexual misconduct;

(2) physical or mental abuse; or

(3) corporal punishment;

by the *insured*.

For the purpose of this exclusion, abuse means an act that is committed with the intent to cause harm; or

o. *bodily injury* or *property damage* arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

*We* also do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*;

p. *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss; or

q. liability assumed by any *insured* under any contract or agreement to pay special assessments levied against the *condominium* owners by the *association* in accordance with the governing rules of the *condominium*. This exclusion does not apply with respect to loss under Coverage D.

2. Coverage L does not apply to:

a. liability:

(1) for *your* share of any loss assessment charged against all members of any type of association of property owners; or

(2) imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the *insured* would have in absence of the contract or agreement;

b. *property damage* to property owned by any *insured* at the time of the *occurrence*;

c. *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*. This exclusion does not apply to *property damage* caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d. *bodily injury* to a person eligible to receive any benefits required to be provided or voluntarily provided by an *insured* or the *condominium* under a workers' compensation, non-occupational disability, or occupational disease law;

e. *bodily injury* or *property damage* for which an *insured* under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f. *bodily injury* or *property damage* arising out of any real property any *insured* has sold or transferred. This includes but is not limited to *bodily injury* or *property damage* arising out

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any *property damage* to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1) *bodily injury* arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2) *property damage* arising out of fire, smoke, or explosion; or

g. any order of restitution issued by a court in a criminal proceeding or equitable action. This exclusion does not apply to the extent liability coverage would apply in the absence of the order of restitution.

3. Coverage M does not apply to *bodily injury*:

a. to a *residence employee* if it occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured*. This exclusion does not apply with respect to loss under Coverage D;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

c. to a person other than a *residence employee* of an *insured*, regularly residing on any part of the *insured location*; or

d. from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the *Declarations*. This is the limit for all damages from each *occurrence* for the policy period in which the *bodily injury* or *property damage* first occurs, regardless of the number of *insureds*, claims made, or persons injured. No additional limits or coverage will be available for the *occurrence* under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the *Declarations*. This is *our* limit for all medical expenses for *bodily injury* to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each *insured*. This condition does not increase *our* limit of liability for any one *occurrence*.

3. **Duties After Loss.** In case of an accident or *occurrence*, the *insured* must cooperate with *us* in the investigation, settlement, or defense of any claim or suit and also perform the following duties that apply. *You* must cooperate with *us* in seeing that these duties are performed:

a. give written notice to *us* or *our* agent as soon as possible, which sets forth:

(1) the identity of this policy and the *insured*;

(2) reasonably available information on the time, place, and circumstances of the accident or *occurrence*; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to *us* every notice, demand, summons, or other process relating to the accident or *occurrence*;

c. at *our* request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an *insured*;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under **SECTION II – ADDITIONAL COVERAGES**, **Damage to Property of Others**, exhibit the damaged property if within the *insured's* control; and

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

e.  the *insured* must not, except at the *insured's* own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the *bodily injury*.

4.  **Coverage M Requirements.** *We* may require the following in regard to any Coverage M claim:

    a.  written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

    b.  the injured person's submission to physical examinations by a physician selected by *us* when and as often as *we* reasonably require; and

    c.  any authorizations from the injured person as *we* may require.

5.  **Payment of Claim – Coverage M or Damage to Property of Others.** Payment under either of these is not an admission of liability by an *insured* or *us*.

6.  **Suit Against Us.** No action will be brought against *us* unless there has been compliance with the policy provisions.

    No one will have the right to join *us* as a party to an action against an *insured*. Further, no action with respect to Coverage L will be brought against *us* until

the obligation of the *insured* has been determined by final judgment on the merits, after an actual trial or by an agreement signed by *us*; but *we* will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7.  **Bankruptcy of an Insured.** Bankruptcy or insolvency of an *insured* will not relieve *us* of *our* obligation under this policy.

8.  **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9.  **Notice of Settlement of Liability Claim.**

    a.  *We* will notify the *insured* in writing of any initial offer to compromise or settle a claim against the *insured*. *We* will give the *insured* notice within 10 days after the date the offer is made.

    b.  *We* will notify the *insured* in writing of any settlement of a claim against the *insured*. *We* will give the *insured* notice within 30 days after the date of the settlement.

## SECTION I AND SECTION II – CONDITIONS

1.  **Policy Period.** This policy applies only to loss under Section I or *bodily injury* or *property damage* under Section II that occurs during the period this policy is in effect.

2.  **Concealment or Fraud.** This policy is void as to *you* and any other *insured*, if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

    a.  If the misrepresentation was made in the application for the policy, the policy is void if it is shown at trial that the matter misrepresented:

        (1)  was material to the risk; or

    (2)  contributed to the contingency or event on which the policy became due and payable.

    b.  If the misrepresentation was made in a proof of loss, the policy is void if it is shown at trial that the misrepresentation:

        (1)  was fraudulently made;

        (2)  misrepresented a fact material to the question of *our* liability under the policy; and

        (3)  misled *us* and caused *us* to waive or lose a valid defense to the policy.

3.  **Liberalization Clause.** If *we* adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
H6-2143

period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.**  A waiver or change of any provision of this policy must be in writing by *us* to be valid. *Our* request for an appraisal or examination does not waive any of *our* rights.

5. **Cancellation.**

   a.  *You* may cancel this policy at any time by giving *us* advance written notice of the date cancellation is to take effect. *We* will send *you* any refund due no later than 15 *business days* after the effective date of cancellation.

   b.  *We* may cancel this policy for the reasons stated in this condition by mailing *you* notice in writing of the date cancellation takes effect.

      (1)  If this policy has been in effect for less than 60 days and is not a renewal policy, *we* may cancel this policy if:

         (a)  *we* identify a condition that:

            i.   creates an increased risk of hazard;

            ii.  was not disclosed in the application for insurance coverage; and

            iii. is not the subject of a prior claim; or

         (b)  before the effective date of the policy, *we* have not accepted a copy of a required inspection report that:

            i.   was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and

            ii.  is dated not earlier than the 90th day before the effective date of the policy.

      (2)  If this policy has been in effect for 60 days or more, *we* may not cancel this policy unless:

         (a)  *you* do not pay the premium or any portion of the premium when due;

         (b)  the Texas Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state;

         (c)  *you* submit a fraudulent claim; or

         (d)  there is an increase in the hazard covered by this policy that is within *your* control and that would produce an increase in the premium rate of this policy.

   c.  The effective date of cancellation cannot be before the 10th day after *we* mail the notice if *we* cancel for any of the reasons in paragraph (2), or the 30th day after *we* mail notice if *we* cancel for any other reason. *Our* notice of cancellation must state the reason for cancellation.

   d.  If *we* cancel, *our* notice to *you* will state that if the refund is not included with the notice, it will be returned no later than 15 *business days* after the effective date of cancellation.

   e.  *We* may not cancel this policy solely because *you* are an elected official.

6. **Nonrenewal.**

   a.  *We* may not refuse to renew this policy solely because *you* are an elected official.

   b.  *We* may refuse to renew this policy if *you* have filed three or more claims under the policy in any three year period provided that *we* have given *you* notice in compliance with Texas law.  Such notice will list two prior claims *you* have made under the policy and will provide, in part, that the filing by *you* of another claim could cause *us* to refuse to renew *your* policy.

   A claim under this subsection of this policy does not include a claim that is filed but is not paid or payable under the policy, a claim resulting from a loss caused by natural causes or an appliance-related claim that *we* are prohibited from using under Texas law.

   Consistent with Texas law, an appliance-related claim is a request for indemnification for a loss

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

arising from the discharge or leakage of water or steam from an appliance that is the direct result of the failure of the appliance. An appliance means a household device operated by gas or electric current, including hoses directly attached to the device. The term includes air conditioning units, heating units, refrigerators, dishwashers, icemakers, clothes washers, water heaters and disposals.

c. If *we* refuse to renew this policy, *we* must deliver to *you*, or mail to *you* at *your* last mailing address known to *us* and any mortgagee named in the *Declarations*, written notice of *our* refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If *we* fail to give *you* proper notice of *our* decision not to renew, *you* may require *us* to renew the policy.

7. **Assignment of Policy.** Assignment of this policy will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.

8. **Subrogation and Reimbursement.**

   a. **Subrogation.**

      (1) Applicable to SECTION I:

          If any *insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them. However before a loss, an *insured* may waive in writing all rights of recovery against any person.

      (2) Applicable to SECTION II:

          If any *insured* has rights to recover all or part of any payment *we* have made under this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others**.

b. **Reimbursement.**

   If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or organization, then the *insured* to or for whom *we* make payment must:

   (1) hold in trust for *us* the proceeds of any recovery; and

   (2) reimburse *us* to the extent of *our* payment.

9. **Death.** If *you* die:

   a. *we* insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

   b. *insured* includes:

      (1) any member of *your* household who is an *insured* at the time of *your* death, but only while a resident of the *residence premises*; and

      (2) with respect to *your* property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

11. **Premium.**

    a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued *Declarations*.

    b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and

33

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

other elements that affect the premium applicable at the time of renewal.

c.   The premium for this policy may vary based upon:

   (1)   the purchase of other products or services from the *State Farm Companies*;

   (2)   the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

   (3)   an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

d.   *Your* purchase of this policy may allow:

   (1)   *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

   (2)   the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

12.   **Right to Inspect.**

a.   *We* have the right but are not obligated to perform the following:

   (1)   make inspections and surveys of the *insured location* at any time;

   (2)   provide *you* with reports on conditions *we* find; or

   (3)   recommend changes.

   Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

b.   *We* do not:

   (1)   make safety inspections;

   (2)   undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

   (3)   warrant that conditions are safe or healthful; or

   (4)   warrant that conditions comply with laws, regulations, codes, or standards.

   This condition applies to *us* and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on *our* behalf.

13.   **Change of Policy Address.** *We* may change the Named Insured's policy address as shown in the *Declarations* and in *our* records to the most recent address provided to *us* by:

a.   *you*; or

b.   the United States Postal Service.

14.   **Electronic Delivery.** With *your* consent, *we* may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

15.   **Duties Regarding Claim Information.** An *insured* or a legal representative acting on an *insured's* behalf must provide *us* with any requested authorizations related to the claim. *Our* rights will not be impaired by any:

a.   authorization related to the claim; or

b.   act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the *Declarations* and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of *insured* is extended to include the person or organization shown in the *Declarations* as an Additional Insured or whose name is on file with *us*. Coverage is with respect to:

1. **SECTION I – Coverage A**, **Coverage B**, or **Coverage C**; or

2. **SECTION II – Coverage L** and **Coverage M** but only with respect to the *residence premises*. This coverage does not apply to *bodily injury* to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the *Declarations*.

**Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability**, item b., for property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the *Declarations* for this option.

**Option BU – Business Pursuits. SECTION II – EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the *business* pursuits of an *insured* who is a:

    a. clerical office employee, salesperson, collector, messenger; or

    b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

    while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

    a. for *bodily injury* or *property damage* arising out of a *business* owned or financially controlled by the *insured* or by a partnership of which the *insured* is a partner or member;

b. for *bodily injury* or *property damage* arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

    (1) computer programming, architectural, engineering, or industrial design services;

    (2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

    (3) beauty or barber services or treatment;

c. for *bodily injury* to a fellow employee of the *insured* injured in the course of employment; or

d. when the *insured* is a member of the faculty or teaching staff of a school or college:

    (1) for *bodily injury* or *property damage* arising out of the maintenance, use, loading, or unloading of:

        (a) draft or saddle animals, including vehicles for use with them; or

        (b) aircraft, *motor vehicles*, recreational *motor vehicles* or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

        owned, operated, or hired by or for the *insured* or employer of the *insured* or used by the *insured* for the purpose of instruction in the use thereof; or

    (2) under **Coverage M** for *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

The following additional provisions apply:

1. ***We*** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a. mechanical breakdown, wear and tear, or gradual deterioration;

    b. all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, ***we*** will pay for losses caused by wild bears or deer;

    c. any process of refinishing, renovating, or repairing;

    d. dampness of atmosphere or extremes of temperatures;

    e. inherent defect or faulty manufacture;

    f. rust, fouling, or explosion of firearms;

    g. breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

    h. infidelity of an ***insured's*** employees or persons to whom the insured property may be entrusted or rented;

2. ***Our*** limit for loss by any Coverage B peril except theft is the limit shown in the ***Declarations*** for Coverage B, plus the aggregate limit;

3. ***Our*** limits for loss by theft are those shown in the ***Declarations*** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. ***Our*** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the ***Declarations*** for this option.

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental ***business*** occupancy on file with ***us***.

1. **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this ***business*** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that

equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the ***Declarations***. The first limit applies to property on the ***residence premises***. The second limit applies to property while off the ***residence premises***. These limits are in addition to the **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability** on property used or intended for use in a ***business***.

2. Under Section II, the ***residence premises*** is not considered ***business*** property because an ***insured*** occupies a part of it as an incidental ***business***.

3. **SECTION II – EXCLUSIONS**, item 1.b. is replaced with the following:

    b. ***bodily injury*** or ***property damage*** arising out of ***business*** pursuits of any ***insured***, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-***business*** pursuits or to ***business*** pursuits of an ***insured*** that are necessary or incidental to the use of the ***residence premises*** as an incidental ***business***;

4. This insurance does not apply to:

    a. ***bodily injury*** to an employee of an ***insured*** arising out of the ***residence premises*** as an incidental ***business*** other than to a ***residence employee*** while engaged in the employee's employment by an ***insured***;

    b. ***bodily injury*** to a student arising out of corporal punishment administered by or at the direction of the ***insured***;

    c. liability arising out of any acts, errors, or omissions of an ***insured***, or any other person for whose acts an ***insured*** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an ***insured's*** incidental ***business*** involving data processing, computer consulting, or computer programming; or

    d. any claim made or suit brought against any ***insured*** by:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

(1) any person in the care of any *insured* because of child care services provided by or at the direction of:

   (a) any *insured*;

   (b) any employee of any *insured*; or

   (c) any other person actually or apparently acting on behalf of any *insured*; or

(2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

   (a) any *insured*;

   (b) any employee of any *insured*; or

   (c) any other person actually or apparently acting on behalf of any *insured*.

Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**, **Theft** apply to Option JF.

The following additional provisions apply:

1. *We* will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, *we* will pay for losses caused by wild bears or deer;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

2. *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3. *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4. *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the *Declarations* for this option.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

H6-2143

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Joanna Walls on behalf of Patrick Pijls
Bar No. 24118501
jwalls@mckoolsmith.com
Envelope ID: 60352335
Status as of 12/29/2021 10:35 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joanna Walls | | jwalls@mckoolsmith.com | 12/28/2021 6:30:14 PM | SENT |
| Patrick Pijls | | ppijls@mckoolsmith.com | 12/28/2021 6:30:14 PM | SENT |